Hoffman, J. (Dissenting.)
I shall first examine the claim and position of Abraham Van Vechten.
1st. It must be admitted, that if the peculiar circumstances attending John Van Vechten’s purchase of the boat, and the position of Abraham Van Vechten as assignee of the Drew mortgage, do not make a difference, that mortgage must be treated as extinguished.
If a mortgagor simply pays off the first of two incumbrances, he has no right to claim that a transfer to himself, or a trustee for him, shall be available as against his own second incumbrancer. A mortgagor liable to pay a sum of money to his first *405 incumbrancer, pays it, and gets a transfer; but that transfer is something which, on general principles, he cannot set up against those who claim as his creditors, by a title subsequent to that which he has so paid off.
It does not depend upon the technical doctrine of merger of the debt by the operation of payment; but if that debt could have been assigned over to a Trustee for the benefit of the mortgagor in effect, still the mortgagor would be altogether estopped from setting up the charge against the party in whose favor he created the other security. When a mortgagor takes an assignment to his own Trustee, he can never set up the mortgage debt, outstanding in the Trustee, against the second incumbrance.
I have stated these propositions in nearly the language of the Court in Otter v. Vaux. (39 Eng. Law & Eq. R., 611; in Chancery, 1856.) The case of Gardner v. Astor, (3 John. Ch. R., 53,) involves a similar principle.
But the question in the present case still is, does a payment by a mortgagor, with an assignment to another of the mortgage, absolutely, and for all purposes, produce an extinction of the mortgage ? I think not.
First. I apprehend that a mortgagor may, upon paying the amount, have an assignment of the mortgage made to a Trustee, and thus keep it alive, so that he could bequeath it as personal property, or transfer it so as to have effect against volunteers under him, and keep it as a charge on the estate against all with notice, at least. The power of one who holds property subject to a mortgage created by another, to do this, and to keep such mortgage in force for all purposes which it could subserve in other persons’ hands, is undoubted. (Millspaugh v. McBride, 7 Paige, 509, and cases; Bailey v. Willard, 8 N. H. R., 429.)
Next. It is apparent that a naked legal right to the mortgage passed to John Van Vechten by a sufficient assignment. A right to sue in his own name passed to him. A beneficial interest to some extent was vested in him. He had a right to hold the mortgage as security for his responsibility, and that of his indorser, upon the note given to the Sheriff, and on which he and such indorser were afterwards sued, and judgment recovered against them for a balance of over $4,000.
*406 In this connection, it is to be observed that the Court below has not found that John Van Vechten, or his indorser, was insolvent. The evidence would not have warranted it.
The exact position of Nicholas Elmendorf and John Van Vechten then appears to be this: The former, the owner and mortgagor of the vessel, employed the latter as his agent or Trustee to purchase her at the Sheriff’s sale, engaging to pay the sum which he should become liable to pay. Van Vechten became responsible for the purchase-money on his own note with an indorser. He was justified in taking the title, and holding the possession until his own and his indorser’s liability for the purchase-money was removed, and his advances for liens repaid. He did take possession; he did exercise control. That possession and control was not interfered with after the sale, except by officers of the law. It was never .interfered with by Nicholas Elmendorf.
Again, John Van Vechten obtained of Abraham Van Vechten, on the 18th of July, 1854, the sum of $1,795, which was applied to liens upon the vessel. John Van Vechten was liable for this money. John Van Vechten must be treated as having Elmendorf’s authority to borrow it. As to Elmendorf, at least, he had a right to retain the assigned mortgage for his reimbursement.
The note remaining unpaid, which accompanied the. mortgage, went into John Van Vechten’s hands, and from him to Abraham Van Vechten. No doubt, if Hasten or Schoonmaker had been sued upon it, (being taken after maturity,) they could have set up Elmendorf’s engagement to pay it, and the actual payment of it out of his funds.
But as to Elmendorf, he can be considered as having given a full consent or ratification of John Van Vechten’s act, in taking and holding the note as well as the assignment, and of making use of both for the purpose of securing Abraham his advance, so that, if his continued liability on the note was. essential to preserve the mortgage in force against him, it is to be legally inferred even when in John Van Vechten’s hands, yet more strongly, when in the hands of Abraham.
The cases of Mead v. York, (2 Seld., 449,) and of Truscott v. King, (id., 147,) are I think clearly distinguishable from the present case In the former, when Smith paid his note indorsed by *407 York, (the assignee of the mortgage,) he paid the mortgage debt, the sum received to pay the mortgagee. The only question then was, whether a parol agreement would avail, made between York and himself, that the assignment of the mortgage should stand as security for York’s future indorsements, and against a subsequent judgment creditor of the mortgagor. No attempt was made by assignment or other writing, to keep the mortgage alive for any purpose, either by the mortgagor or his agent. It was an attempt to revive a mortgage, before absolutely and unqualifiedly paid off. It was not a case of a mortgagor consenting or directing his agent or trustee, to take an assignment of the mortgage for his own protection against a liability, and ratifying its transfer to another upon money being advanced to pay executions against him.
Similar remarks are applicable to Truscott v. King.
I conclude that the mortgage was not extinguished when it was assigned, or by its assignment to John Van Vechten; that it retained a legal existence, to be controlled by what should appear to be the rights and equities between the parties interested to sustain or contest it. The third subdivision of the fourth point of the defendant, Schoonmaker, is pertinent to this subject. It was reasonable to keep the mortgage alive to protect against other liens, before the perfection of the title at the Sheriff’s sale.
If then the finding of the Judge imports that as between John Van Vechten and the creditors of Nicholas Elmendorf, the assignment to the former was void as fraudulent, it is not warranted by the case. The finding in this particular may possibly be construed so as to admit of the views I now take ;> but it is not a natural, nor a safe construction; and if the case turns upon, or is essentially effected by it, I shall conclude a new trial to be necessary.
The 19th article of the findings ought, I think, to be omitted. The facts which I have stated are the true results of the evidence, and will cover the whole case more justly.
John Van Vechten then became a purchaser at the Sheriff’s sale, under circumstances which entitled him to hold the vessel until his own and his indorser’s liability for the purchase note was discharged, and his advances for liens repaid; and was a purchaser for value in so far as such liability extended and operated. *408 He may be treated as a surety or substantially as a mortgagee placed in possession; and in this view of his relation and legal position, the rights of existing creditors and mortgagees, as well as of subsequent claimants, are to be examined.
But next, could not Abraham Van Vechten avail himself of the mortgage as an innocent holder for value, assuming that John Van Vechten, his assignor, could not do so?
Elmendorf, treated as original owner, employs John Van Vechten as his agent in the intended purchase of the vessel, and to arrange as to the incumbrances. Elmendorf knew of the mode pursued by such agent as to the assignments, both the one to himself, and that to Abraham Van Vechten. Certainly, at least, there was an implied recognition of all, John Van Vechten did. The money obtained from Abraham on the assignment went in part to pay Elmendorf’s debts then in execution, and partly for expenses of the boat. Elmendorf does not call for the outstanding promissory note, but permits it to . go into Abraham Van Vechten’s hands.
The case of White v. Knapp, (8 Paige, 173,) is analogous tthe present. Knapp had given a mortgage to White in 1836. There was a previous mortgage on the premises for $1,400, given in 1834, by Hinkley, the then owner. In June, 1836, there remained due on this mortgage over $380, which balance the holder of the mortgage called for. Hinkley borrowed $380 of the defendant, Thomas, to pay with some of his own money, the mortgage debt, promising the security of the mortgage. He paid the sum due to the holder, and got an assignment from him to Thomas, and afterwards delivered him the bond and mortgage. The claim of Thomas to a lien was sustained against another mortgagee. The Chancellor said: “ There could be no doubt of the intention to preserve the existence of the security, from the fact that the mortgage was assigned to Thomas by the proper officer of the Bank at the time the money was paid.”
Had Elmendorf, with the concurrence of John Van Vechten, borrowed the money of A. Van Vechten, and got an assignment from Dunlop directly to him, the case would have been exactly in point. I no not see a substantial difference in principle.
Still the question, raised in many of the points of the parties, is not fully answered. Must not Abraham’s rights and claims be *409 exactly the same as those of John Van Vechten; and in the present view on the theory that John Van Vechten had no right or just title at all? As assignee of a chose in action, must he not occupy precisely the position of John, as to every claimant existing or subsequent of the property, or of any interest in it?
The anomaly which exists in the rules of law relating to a transfer of real estate, and the assignment of a chose in action, is noticed by the Master of the Rolls in Cockell v. Taylor. (15 Eng. Law & Eq. R., 101.) “It cannot be doubted that the purchaser of a chose in action does not stand in the situation of a purchaser of real estate without notice, and for valuable consideration, but takes the thing bought subject to all prior claims upon it."
This anamoly also exists as to goods capable of material possession, which have come to an innocent holder from a fraudulent possessor. (Mowrey v. Walsh, 8 Cow., 238; Hoffman v. Noble, 6 Metcalf, 68; Caldwell v. Bartlett, 3 Duer, 341; Saltus v. Everett, 20 Wend., 268.)
In Mangles v. Dixon, in the House of Lords, (18 Eng. Law & Eq. R., 82; 3, House of Lords Cases, 702,) the Lord Chancellor said: “If there is one rule more perfectly established in a court of equity than another, it is, that whoever takes an assignment of a chose in action, (which this charter party was, for it is not assignable at law,) takes it subject to all the equities of the person who makes the assignment.” And in Brandon v. Brandon, (39 Eng. Law & Eq. R., 186,) Lord Chancellor Chancellor says: “ The purchaser, whether with or without notice, of a chose in action, cannot be in a better situation than the person from whom he purchased.”
In the cases referred to, indeed in the greater number of cases on the subject, the question arises between the assignee and the debtor. Whatever equity or right the latter possessed against the assignor, he may assert against the assignee. Of this character also are Hamil v. Stokes, (4 Price, 161,) Matthews v. Wallwyn, (4 Ves., 118,) Ellis v. Messervie, (11 Paige, 467,) Gay v. Gay. (10 id., 369.)
The question between such parties will be affected by various considerations. “ It is the duty of the assignee to make inquiry of the debtor; and if, upon such inquiry, he is informed that the *410 security is valid and unpaid, or if by the acts or declarations of the debtor, or even by his standing by in silence, and seeing the assignment made without objection, the assignee is led to believe the instrument valid, the debtor cannot set up his equity as a defense.” (Kinky v. Hill, 4z Watts & Serg., 426; Lord St. Leonards in Mangles v. Dixon, ut supra.)
The case of Mickles v. Townsend, in the Court of Appeals, (18 N. Y. R., 575,) is a very striking example of this .rule. A person was seized of the equity of redemption in land, subject to a mortgage made by a former owner, and conveyed it with warranty to the plaintiff. He procured an assignment of the mortgage, and transferred it for value to Townsend. It was held, that the mortgage became extinguished in the vendor’s hands, as to his vendee, with warranty; and the bona fide assignee could take no better title. The purchase of the mortgage by the vendor inured to the benefit of his vendee.
But there is another class of cases in which the rule has been more rarely applied, and as to which its extent is not, as far as I have ascertained, satisfactorily determined. It may however, I think, be safely stated, that as between a bona fide assignee for value, and parties other than the debtor or creator of the obligation, the position of such parties has an influence upon the questions, and an influence giving advantages in legal claim and title to an assignee, not possessed by an assignor.
Thus, in the case of George v. Milbanke, (9 Ves., 196,) as stated by Sir William Grant in Daubeny v. Cockburn, (1 Mer., 639,) the claim of the assignee was allowed to prevail, not against persons who had antecedently any specific interest or estate in the subject of the appointment, but against creditors who had only a general equity to have what was appointed, considered as assets for the payment of debts. “The question-,” says Lord Eldon, “is whether being not a volunteer, but a purchaser, creditors having no specific charge on the property, have as good an equity. I think they have not.”
In Moore v. Holcombe, (3 Leigh’s R., 597,) the vendor of land, with the purchase-money unpaid, was considered to have an equity against his vendee for payment out of bonds given on the purchase from such vendee, by an innocent third party. But the first vendee having assigned the bonds, there was no such *411 equity as against the assignee. It was the equity of a third person, not a party to the bond, and of which he had not notice.
Clearly also the rule is inapplicable in a number of cases in which there is a latent equity in a stranger which is not known to the assignee, yet which would defeat the assignor.
Redfearn v. Ferrier, (1 Dow’s P. R., 50,) Murray v. Lylburn, (2 John. Ch. R., 441); Livingston v. Dean, (id., 479); Mott v. Clark, (9 Barr’s R., 399,) are of this character. In the former it was held, that what in Scotland is called an intimated assignation, (an assignment of which due notice has been given,) would prevail against a latent equity unknown to the assignee. The distinction between equities existing in the debtor and in third persons, is dwelt upon.
The case of Hoyt v. Thompson in the Court of Appeals, (19 N. Y. R., 207,) appears to me important upon the present inquiry. Thompson derived title to a mortgage through the State of Michigan: Hoyt through a Receiver of the Morris Canal and Banking Company. The Court of Appeals decide: 1st. That as between the Company and the State, the title of the latter was valid. 2d. It is assumed, if not held, that the title of the State might have been defective as against creditors of the Company. 3d. On the concession that it might be defective as to them, it is decided, that Thompson was a purchaser in good faith and for value, and without notice, and could hold against the plaintiff.
I understand also the decision to concede, that Hoyt stood in the situation of the creditors upon the point considered. If Hoyt represented the Company simply, the discussion of the question would seem to have been useless, as the title of the State against the Company was held absolute.
The decision further assumes that the Judge, at Special Term, may have been right in concluding that the Company was insolvent, and that the State of Michigan had knowledge of such insolvency, as well as of the general statute avoiding transfers in contemplation of it. But it concurs with the General Term in holding that Thompson did not actually know either matter; and although he might be chargeable with notice of a charter provision, he was not with notice of a general foreign law, although the charter was subject to it.
*412 Again, there is another point in the decision to be noticed. There was an infirmity in Hoyt’s title. It could not be traced to the voluntary act or conveyance of the Company, the owner. Hoyt claimed under the statute of another State, upon an assignment effected by that statute. Such an assignment was of no validity here; and the principles of inter-state comity did not call upon our Courts to recognize its operation, so as to divest the title of a citizen acquiring his rights from the Company under its jus disponendi.
In short, I regard the decision as entirely consistent with, although not in terms declaring, the proposition of Mr. Justice Seldeít in his dissenting opinion in December, that the claim of creditors of the Company, (and, as I deduce, of the plaintiff,) could have been sustained against the State of Michigan.
I think the proposition may be drawn from this case, that a bona fide assignee of a chose in action has a right to avail himself, of an infirmity, or imperfection in the title of the party who impeaches his claim, even when such infirmity would not have prevented that party’s success against the assignor.
Tested by the rules thus presented, I think the claims of all the contestants, hostile to Abraham Van Vechten may be disposed of in his favor.
The only one prior in point of time is that of Shaw.
Shaw knew of the existence of the mortgage; he knew that the vessel was to be sold subject to it; this mortgage was in full force, unaffected by any omission to take possession, or to file, when Shaw took his own on the 25th of February, 1854, or filed it on the 12th of July, of that year. In the fall of 1854, he recognizes the Drew mortgage as valid, and the right of Abraham Van Vechten as assignee to a priority under it.
The plaintiff cannot be permitted to.question it. He had actual notice of its existence; besides, he is not such a creditor or mortgagee as is entitled to question it.
Elmore also had actual notice of the mortgage before taking his own. (Hill v. Beebe, 3 Kern, 556.)
Griffiths abandoned his levy, and has not appealed.
Sehoonmaker in his own right cannot be entitled to question this prior mortgage. The confession to him was void; his demand was subsequent in origin; and I understand the rule to *413 be, that a creditor cannot be in a position to impeach a prior mortgage until he has obtained judgment and execution. His judgment and execution were void as to bona fide purchasers and creditors, perhaps as to all except Elmendorf and volunteers under him.
Schoonmaker, as assignee of the Westchester County Bank, presents this case on the facts and present evidence. The Bank does not appear to have been a creditor until March 16, 1855. The boat was then out of the possession or control of the mortgagor, Elmendorf. The other debtor, John Yan Yechten, was not mortgagor. The Bank was not such a creditor in a position to question the mortgage for an omission to take possession or reñle after October, 1854. Abraham is within the principle by which John’s purchase may be regarded as bona fide and on his own account. If the date of the debt to the Bank should be in evidence, a question not free from doubt, may arise from the omission to refile this mortgage by October 25,1854. In the points and the opinion it is stated that in June, 1854, the Bark became creditors of Elmendorf; and at that time, the actual possession was in him, although subject to the levy of the Sheriff. But there is neither finding nor evidence of this fact.
It remains to be observed, that the omission to take possession before the 29th of April, 1854, when the last note fell due was justifiable; that the same omission from the 29th of April to the 28th of June is excusable, and does not invalidate the mortgage. That on the 28th of June, that was done which may be treated as equivalent to an assertion of possession; and that after the sale, the rights of the assignee of the mortgage, as between himself and the other contestants, is not prejudiced by such neglect.
As the case stands, I think Abraham Yan Yechten’s right is paramount.
2. The Shaw mortgage is next in priority in respect of time, and will next be considered.
It was not extinguished or superseded by the sale under the executions and the purchase by John Yan Yechten. The latter bought with full knowledge of the mortgage. His title, valid for his own protection, must yield to Shaw’s prior and known equity and lien, when the executions which alone could give *414 John Van Vechten a preference were paid entirely out of El men - dorf’s money.
Again, three of the executions under which John purchased were lodged with the Sheriff in January, 1854, but the levy was not made until May, 1854, Shaw’s mortgage was in February, 1854. He was protected by the provision of the statute, (2 R. S., p. 366, § 17,) as to purchasers between the lodging and levy of an execution.
The plaintiff cannot question it. He took his mortgage with actual notice of this charge. (Hill v. Beebe, 3 Kern., 556.) His mortgage also was taken on the 21st of March, 1855, before it was necessary to refile the Shaw mortgage, and the term subsequent in the statute means subsequent to the period when the time for refiling expires. (Meech v. Patchin, 14 N. Y. R., 71.) That time ended on the 12th July, 1855. Besides, I do not believe that the holder of a usurious security can question a prior mortgage for statutory fraud.
As between Elmore and Shaw, the case is more difficult.
■Elmore’s mortgage dated 15th September, 1855, was duly recorded at the custom-house, and duly filed in the proper county. He immediately employed an officer to assert his claims under it, and take all the possession he could. He is the only one of the parties to whom some negligence is not attributable.
If Elmore is a purchaser or mortgagee in good faith, within the meaning of the statute, his priority over Shaw would seem clear. The rule in Meech v. Patchin, (ut supra,) would apply. Elmore became a mortgagee after the time for refiling the Shaw mortgage had expired, viz.: after the 12th of July, 1855.
The case of Manning v. Monaghan, (1 Bosw., 459,) holds, that although the mortgagor be out of possession, a mortgage must be refiled within the year to keep its priority against creditors. It is true that Gosling appears to have become a purchaser on the 21st of April, 1855.
The time of refiling the mortgage expired about the 11th of October, 1855, it having been filed in October, 1854, being dated the 5th of October, 1854. Hence, the case may perhaps be subject to the doubt arising under Meech v. Patchin, (ut supra,) unless there is any ground for holding, that Gosling got Monoghan’s *415 title as execution creditor. The term subsequent in the statute applies only to purchasers and mortgagees.
In Ely v. Carnley, (3 E. D. Smith, 489; on appeal, 19 N. Y. R., 496,) it was held below, that the mortgagee was bound to refile even after forfeiture; and the reasoning of Mr. Justice Woodruff tends to prove the necessity of it in all cases, except where the mortgagee is in possession. The head-note of the case in the Court of Appeals states this explicitly; and the decision seems to lead to it, if not expressly to hold it.
I think the proposition of the Judge at Special Term is correct. “No language can be more peremptory or more explicit than that employed in the act of 1833. If there is not an immediate delivery (to the mortgagee,) and an actual and continued change of possession, the mortgage must be filed, and refiled. The act covers every case in which possession is not delivered to the mortgagee.”
Hence, Elmore, if a mortgagee in good faith, has a priority over Shaw.
It is said that he is not such purchaser within the statute, because he advanced the money before taking the mortgage, not upon the faith or security of it.
The case of Ray v. Birdseye, (5 Denio, 619,) is relied upon. It arose under the statute (2 R. S., p. 366, § 17,) providing that the title of any purchaser in good faith of any goods and chattels acquired prior to the actual levy of any execution, without notice of such execution being issued, shall not be divested by the fact that such execution had been delivered to an officer to be executed before the purchase was made. The arrangement was, that the party should have wheat as a security for a note then held by him. It was treated, in the Court of Errors, as a mortgage, and that the party was not a purchaser so as to hold the property against an execution.
We may observe, that the original rule of the common law created a lien on goods from the teste of the execution. The statute restricted this right to the time of delivery, but made it then effective, with one qualification, that of a purchaser in good faith between delivery and levy without notice of the execution.
When the case was before the Supreme Court at a prior stage, (4 Hill, 158,) that Court thought that a tona fide preexisting debt *416 constituted a valuable consideration and purchase in good faith. There could be no doubt that Ray, though a mortgagee, was to be deemed a purchaser, pro tanto, within the statute.
The provision of the statute now considered is, that every mortgage filed in pursuance of this act shall cease to be valid as against the creditors of the mortgagor, and against subsequent purchasers or mortgagees in good faith, after the expiration of one year from the filing thereof, unless refiled in the manner prescribed.
There is, perhaps, a distinction between the two statutes which is of moment. The execution creditor acquires a lien by delivering the process which nothing of his own neglect affects, and which is only to be displaced by one who shall rigidly come within the statute. In the present case the mortgagee’s omission to file or refile his mortgage tends to deceive the subsequent purchaser, who, finding no legal record there, takes a' mortgage for prior demands, and omits to resort to other measures to secure them.
The case of Baskins v. Shannon, (3 Comst., 310,) is important upon this question. It arose between two mortgagees of a canal boat. Shannon’s was the first in point of time. Possession was not taken under it, nor was it filed in the proper office. There was also no evidence of a consideration. The Court held that, had Baskins been a mortgagee in good faith, his title would have been superior to Shannon’s. It is then said, “to prove such good faith, it is essential to show that the subsequent mortgage was made for a valuable consideration,.or to secure payment of an honest debt.” Baskins sought to connect a sale of wheat and two prior notes with the mortgage. The Court held that he had failed in this attempt, reversing the conclusion of the Court below. “ There is no evidence to authorize a jury to find that the mortgage to Baskins was made to secure the payment of the price of the wheat sold or any portion of it, or of the notes or either of them.”
The case of Hanford v. Artcher, (4 Hill, 271,) in the Court of Errors, is cited. It is there stated, by Senator Hopkins : “ Proof of a valuable consideration, or an honest debt, is essential to show good faith; and if there be no such uro of, the requirement of the statute is not complied with.”
*417 This language is used in relation to the clause of the fifth section of the statute, enabling a mortgagee or vendee who has not taken possession to repel the presumption of fraud, by showing that the transfer was made in good faith. (2 R. S., 136.)
The case of Cole v. White, (26 Wend., 511,) appears to me nearly decisive as to the construction of the phrase as used in this fifth section. I understand, from the statements and opinions, that the mortgage was given for a debt due before its execution. The Chancellor, in Hanford v. Artcher, (4 Hill, 278,) says: “I placed my vote in that case also upon the ground, that the admission of the plaintiff’s counsel, that the debt for which the mortgage was given was actually due, and that the mortgage was given at the solicitation of the mortgagees, for the purpose of securing that debt, was equivalent to an admission, that the security of the debt was the sole object of the mortgage, and not the ostensible object merely.
In Allan v. Cowan, (28 Barb., 99,) although the facts are not distinctly set forth, yet by comparing the statements at pages 100, 105 and 107, there can be no doubt, I think, that the indebtedness on which the mortgage was sought to be supported was prior to it. The ease was decided upon the insufficiency of the testimony to prove any indebtedness; but no point of the nature now suggested was raised.
In Randall v. Parker, (3 Sand. S. C. R., 69,) a bill of sale was executed on the 12th of May, 1845. The consideration expressed was $1,100. It was not pretended that any cash was then paid, but the consideration was stated to have been $1,100, moneys borrowed in 1845 and 1846, for $700, of which promissory notes had been given. In commenting upon the clause that the sale must be made in good faith, the learned Judge says: “The good faith of the parties is evinced by showing that the sale was not colorable and fictitious, but was founded upon a valuable, and as the parties believed an adequate, consideration, and was intended to operate as a valid transfer of the ownership.”
In Gardner v. McEwen, (19 N. Y. R., 123,) “the plaintiff proved that the debt mentioned in the mortgage was Iona fide owing to him, and that the mortgage was given after his repeated endeavors to obtain payment of the debt.” The mortgagee here re *418 covered against an execution creditor. The point was not taken, but the case is still very pertinent.
' It appears to me that all these provisions are part of one system ; and that the interpretation which is given to the phrase “ good faith,” as applicable to purchasers or mortgagees under one section, ought to be adopted as to all.
Ely v. Carnley, is reported in 3 E. D. Smith, 489, and 19 New York Reports, 496. It can scarcely be questioned that the mortgage was for a previous debt, arising from a sale of goods and discounting of notes. (E. D. Smith, 497, &c.) It was dated September 26, 1850, and filed on the day of its execution. It was refiled on the 20th of August, 1851, but with such an error as to the amount of principal, as in truth to make it the same thing as if not refiled at all. On the 5th of September, 1851, the execution was delivered to the Sheriff, under which the claim against the mortgage was made. The mortgage was found by a Referee to have been made for a valuable consideration and in good faith. Justice Woodruff concurs in this finding. (Page 506.) The case was decided on the assumption of its being in good faith, in the Court above. Still the point did not there arise.
And yet the case of Van Heusen v. Radcliff, (17 N. Y. R., 580,) expressly decides that a general assignee for the benefit of creditors is not such a purchaser in good faith, as would entitle him to set aside a mortgage for the omission to file it. Slade v. Van Vechten, (11 Paige, 21,) and Dickerson v. Tillinghast, (4 Paige, 215,) were cited and relied on. The language of Justice Denio, (p. 583,) is very strong. “ When the act respecting the filing of chattel mortgages was passed, the term bona fide purchaser had acquired a settled meaning, which did not include a person whose purchase was on account of an existing debt, and who parted with no property or right to obtain his conveyance.”
I cannot but think that the analogous rule under the fifth section would be the better rule, but yield to what seems the strength of authority. It follows that Shaw has a preference over Elmore.
3. As between Schbonmaker, as assignee of the Westchester County Bank, and Shaw, my view is this:
The material facts bearing upon these relations and rights, are as follows:
*419 Three of the executions under which the Alida was sold on the 17th July, 1854, were lodged with the Sheriff in January,
1854, before the execution of Shaw’s mortgage, which was in February, 1854. The levy upon these and the other executions was in May, 1854.
The facts connected with John Yan Yechten’s purchase, on the 17th of July, 1854, need not be restated.
The Bank’s judgments were recovered, and the executions taken out on the 16th, and on the 17th of March, 1855, a levy was made under them. I think the conclusion that the levy was not dormant is correct.
Shaw was a bona fide mortgagee: his security was next in point of time to the Drew mortgage. Although three of the executions were lodged in January, and his mortgage was in February, 1854, yet he was protected as a purchaser intermediate the lodgment and levy. (2 R. S., p. 366, § 17.) Shaw was not chargeable with notice of the facts attending John Van Vechten’s purchase. Shaw is excused from taking possession. Hothing impairs his claim, or tends to let in Schoonmaker before him, except the omission to file his mortgage before July, 1854, or to refile it before July, 1855.
On the facts found, and the evidence in the case, the claim of the Bank must be treated as arising on the 16th or 17th of March, 1855.
I think the definition of the term “creditor ” in the 6th section of the statute (2 R. S., 136,) which is applied to the 5th section, is to be taken as a definition of the same term in the act of 1833, (ch. 279,) as to the filing and refiling of mortgages.
The creditors then who may take advantage of the omissions of the mortgagee, are creditors at the time of the mortgage, or who became such during the possession or control of the mortgagor.
Subsequent creditors are then let in, but obviously upon the ground that the ostensible possession induces credit. That is permitted by the mortgagee, and if he can be excused for this, it can only be when he keeps his mortgage duly filed. Creditors of this class must still place themselves by means of an execution in a legal position to question the mortgage.
*420 Now on the facts as I have considered and stated them to be, John Van Vechten’s actual possession was a warranted possession, as a quasi mortgagee for his own protection, and as to innocent incumbrancers. The Bank then was not a creditor when Elmendorf had possession or control, and though John Van Vechten was a co-debtor he was not a mortgagor.
The case may be different if what was, as I believe, proven on the trial, but is not in the case, viz., that the debt arose in June, 1854, should be established.
Again, it is true that as the levy was made on the 4th of May, 1854, upon executions, the title of the creditors therein may be considered as passing to the purchaser; and if they could have superseded Shaw’s right by reason of his neglect to die his mortgage before July, the purchaser could do so.
I think the answer is found in the relation of John Yan Yechten. As these executions were paid off by Elmendorf, his right and title were affected, and ultimately got into Griffiths, the Sheriff, by force of the judgment on the note. John could not be allowed to question Shaw’s mortgage, especially as he had knowledge of it at the time of his purchase.
And as to the other claimants, I am clear that the plaintiff cannot do it, in which the other members of the Court concur. I am also clear that Schoonmaker, in his own right, cannot do it on the void confession of judgment to him. Griffiths has not appealed.
4. The next question is, as between Schoonmaker, as assignee of the Bank, and Elmore.
The judgments and executions were against Elmendorf, and also against John Yan Yechten, from whom Elmore took title. At the time of his mortgage, the boat had been levied upon, and was advertised for sale under the executions. Even if a purchaser in good faith under the 17th section, he took his incumbrance after an actual levy.
It seems to me quite clear that Schoonmaker’s claim, as assignee, is better than Elmore’s.
5. Elmore has a preference, I think, over all the other claimants.
6. The plaintiff, and Schoonmaker in his own right being subordinate to all the others, (Griffiths not appealing,) the remain *421 ing question is between these two. I think that the plaintiff has a priority merely because of the previous date of his mortgage from John Van Vechten, over the execution against Elmendorf and subsequent levy.
This point is of no practical importance.
My conclusions are, that Abraham Van Yechten has the first claim upon the fund; Shaw, as mortgagee, the second; Schoonmaker, as assignee of the Westchester County Bank, the third, and Elmore, the fourth.
Judgment reversed, and new trial granted, with costs to abide the event.