## ELLIS and wife vs. MESSERVIE and others.

Where the complainants, in a partition suit, gave a bond and mortgage upon their interest in the land of which partition was sought, during the pendency of the suit, and the premises were afterwards sold, under an order of sale made in that suit, it seems that the holder of such bond and mortgage cannot apply, by a petition in that suit, to which he is not a party, for the payment of the part of the proceeds of the sale which, by the decree, are directed to be paid to the complainant; but that he must seek his relief by bill.

A mortgage, by a party to a partition suit, upon his interest in the premises of which partition is sought, given to his solicitor in such suit during the pendency thereof, is not even prima facie evidence of the existence of the debt for which such mortgage purports to have been given.

The assignee of a bond and mortgage, takes them subject to all the equities which existed against them in the hands of the mortgagee; although the assignee pays the full amount of the bond and mortgage to the assignor, without notice of such equities.

And if a mortgage is fraudulent and void in the hands of the mortgagee, it will also be void in the hands of an assignee thereof for a good consideration, and without notice of the fraud.

Where a party represented himself as the agent of the borrowers, upon a negotiation for a loan on bond and mortgage, and afterwards obtained a bond and mortgage to himself, by committing a fraud upon the supposed borrowers, and assigned such bond and mortgage to the lender; *Held*, that the declarations and representations of the supposed agent of the borrowers were not evidence, as against the mortgagors, of the fact of his agency.

THIS was an appeal, by the complainants, John A. Ellis and wife, from a decretal order of the vice chancellor of the first circuit, made upon the petition of James Evans, who was not a party to the suit, for the payment, to him, of a part of the fund belonging to the complainants, which arose from the sale of the lands of Mrs. Ellis, under a decree in partition; Evans being the assignee of a bond and mortgage, given upon the premises, by Ellis and wife, subsequent to the commencement of the suit.

*H. F. Clark & E. Sandford*, for the appellants.

*W. C. Noyes*, for the respondent.

THE CHANCELLOR. It is not necessary to inquire whether the vice chancellor had any jurisdiction, upon the mere petition of Evans, who was not a party to the suit, to interfere and dispose of the fund in question, without the filing of a bill, in the usual way, to determine the validity of the respondent's bond and mortgage. For I am satisfied that the bond and mortgage were obtained by a most gross fraud, practised both upon Ellis and his wife. This bond and mortgage, being wholly invalid and inoperative in the hands of the mortgagee, his assignee, who has taken an assignment of a mere chose in action, even if he has given a full consideration therefor, which, however, I do not believe, cannot enforce them against the complainants or their property.

The story of the principal witness, upon whose testimony the validity of this bond and mortgage is attempted to be sustained, is wholly incredible in itself. It is also contradicted, not only by the affidavit of Ellis, but also by the testimony of others. And the safety of the community requires that a bond and mortgage obtained by a solicitor, from his client, upon the subject matter of the suit, pending the litigation, should not be permitted to stand for any purpose whatever.

Although Duryea may have represented himself to Evans as the agent of the complainants, to negotiate a loan upon bond and mortgage, those representations were not evidence of the fact of his agency, as against the complainants; and Duryea himself now shows that, if he ever made such representations, he knew them to be false. If the bond and mortgage had been made directly to Evans, and only for the amount which was actually advanced at the time, the complainants' property might have been bound by the mortgage, although such mortgage was obtained from them by the fraud of their solicitor; provided the mortgagee was ignorant of the intended fraud. But here D. Evans had enough to put him upon inquiry, when he saw a mortgage given to the solicitor in the cause, and upon the subject matter of the litigation; and which mortgage was not even prima facie evidence of a good consideration. It was his duty, therefore, to have gone to Ellis, and inquired of

him under what circumstances, and for what consideration, this bond and mortgage were obtained; before he advanced money upon a security which no prudent man would think of buying, without making such inquiry.

The master's report was clearly erroneous, in stating that the consideration for the bond and mortgage was good and sufficient, and that the mortgage, at the time of the execution thereof, was a valid lien upon the interest of Ellis in the premises. The appellant's exception, to the report of the master, should therefore have been allowed. The decretal order of the vice chancellor, overruling that exception, is erroneous and should be reversed. The respondent's exceptions to the report were not well taken, and were *properly* overruled by the vice chancellor. The appellants, therefore, should have been allowed their costs upon the hearing of the exceptions.

It is perfectly well settled that a security which is not nego-tiable, and which is fraudulent and void in the hands of the as-signor, is equally invalid in the hands of the assignee. The respondent's petition should therefore be dismissed; and the fund in court should be directed to be paid over to the present solicitor for the complainants. But as the complainants sub-mitted to the order of reference, instead of appealing from such order, and thereby raising the question as to the jurisdiction of the vice chancellor to settle the petitioner's rights in this suit, I shall not allow to them any costs. upon the reference. They are, however, entitled to their costs upon this appeal, which was properly brought, to reverse the erroneous order appealed from.

Decree accordingly.(<em>a</em>)

(*a*) The decree of the chancellor was affirmed, upon an appeal to the court for the correction of errors, in December, 1846.