## KENDALL *a.* HODGINS.

*New York Superior Court; General Term, October,* 1858.

CONFESSION OF JUDGMENT.—MOTION.—MOVING PARTY.

A statement, made for the purpose of entering a judgment under sections 382 and 383 of the Code, which states, as the facts out of which the debt arose, "that heretofore at the city of New York, I (Hodgins) made my certain promissory note for the sum of two thousand dollars, payable on demand, and that I have not paid said note, and that I am justly indebted to the plaintiff (Kendall) thereupon, in the said sum of two thousand dollars," is wholly insufficient to authorize a judgment to be entered upon it.

A judgment entered on such a statement, and an execution issued on such a judgment may be set aside, on the *motion* of a *bona fide* purchaser of lands on which the judgment is an apparent lien, as to such purchaser and the lands so purchased, and such lands be declared to be freed and discharged of and from the apparent lien of such judgment, and of and from any and every proceeding whatsoever, under and by virtue of or founded on such judgment.

Appeal from an order setting aside a judgment and execution.

This action came before the court at general term, on an appeal by the plaintiff from an order made by Mr. Justice Woodruff, on the 8th of July, 1858, vacating a judgment entered in favor of the plaintiff against the defendant, under sections 382 and 383 of the Code. The order was made on the application of H. F. Pohlman, a *bona fide* purchaser, from said defendant, of lands on which such judgment was an apparent lien, and which lands the plaintiff had caused to be advertised to be sold under an execution issued on such judgment. The statement and confession on which the judgment was entered, read as follows :

TITLE OF THE CAUSE.

I do hereby confess judgment in this cause in favor of Josiah F. Kendall for the sum of two thousand dollars, and authorize judgment to be entered therefor against me.

This confession of judgment is for a debt justly due to the plaintiff arising upon the following facts :

That heretofore at the city of New York I made my certain promissory note for the sum of two thousand dollars, payable on demand, and that I have not paid said note.

And that I am justly indebted to the plaintiff thereupon, in the said sum of two thousand dollars.

JOHN HODGINS.

[ *Verification.* ]

Judgment was entered in this court on said statement, on the 5th of October, 1856, for $2000, with $5 costs, and a transcript of the judgment was filed, and the judgment was docketed in the office of the clerk of Queens county on the same day.

The deed from the defendant and his wife to Pohlman is dated the 10th of October, 1856, and was recorded on the 28th of October, 1856, in Queens county ; the real estate conveyed by it being situate in that county.

Pohlman's attorneys were employed by him to search the title of the property so conveyed, and for liens and incumbrances upon it ; and they caused the clerk of Queens county to

search for conveyances, mortgages, judgments, and other liens and charges upon the property. The clerk made a search, and certified the result; and by his certificate it appeared that no judgment against Hodgins, docketed in Queens county, was found. Pohlman believing the property to be free from any such encumbrance, and having no notice of facts calculated to excite a suspicion to the contrary, bought the real estate, and took a conveyance of it, subject to a mortgage upon it for $1000, and subject also to a lease of the lots, for the price or sum of $2750. Pohlman paid to Hodgins $1750 in cash, and assumed the payment of the said mortgage as the balance of the purchase money. The plaintiff having caused an execution to be issued on said judgment, and the lands so bought by and conveyed to Pohlman to be advertised for sale, Pohlman, on affidavits showing the facts before stated, and on notice, *moved* for and obtained an order vacating the said judgment as to him, and as to the lands so conveyed to him, and setting aside the execution unconditionally, and an advertisement of a sale of said lands under said execution, and declaring the said lands to be freed and discharged of and from the apparent lien of said judgment, and of and from any and every and all proceedings whatsoever, under and by virtue of the same. From that order the plaintiff appealed to the general term.

*H. D. Lapaugh,* for the appellant, insisted that none but judgment creditors could move to vacate the judgment; that the plaintiff, who was a mere grantee under a deed containing full covenants that the lands conveyed were free and clear of all *incumbrances* (except the mortgage and lease recited in it), was not in a position to make such a motion; and that the execution could not be set aside absolutely.

*J. B. Scoles,* for the respondent.

By the Court.*—Bosworth, Ch. J.—The statement on which the judgment was entered is insufficient. (Chappel *a.* Chappel, 2 *Kern.,* 215.)

H. F. Pohlman, who moved to vacate it, is a *bona fide* purchaser of premises on which it is an apparent lien, and which

---

* Present, Bosworth, Ch. J., and Hoffman, Woodruff, and Pierrepont, JJ.

the plaintiff had caused to be advertised to be sold under an execution issued on such judgment.

The effect of an insufficient statement, or who may move to vacate a judgment entered on a statement which does not authorize such entry, the Code has not declared. (*Code*, §§ 382, 383, 384.)

In Dunham *v.* Waterman (6 *Abbotts' Pr. R.*, 357, 366), SELDEN, J., in speaking of the section of the Code which prescribes the particulars essential to a sufficient statement, and of its design and meaning, employs this language :

" The provision does not relate to a mere matter of form, or the manner of conducting a judicial proceding ; but is one which affects substantial rights.   It virtually constitutes a condition precedent to the right of the party to confess the judgment at all.   Although the Code does not, in terms, enact, as was done by the act of 1818, that a judgment confessed, without a compliance with its provisions, shall ' be decreed and adjudged fraudulent' in respect to other *bona fide* judgment creditors ; yet, considering the object in view, it is plain that such must be its meaning."

Section 6 of the act of 1818 declares that if a judgment be confessed without complying with the provisions of that act, " such judgment shall be taken, decreed, and adjudged fraudulent, as respects any other *bona fide* judgment creditors, and every *bona fide purchaser* for valuable consideration of any lands bound or affected by such judgment." (*Sess. Laws of* 1818, *ch.* 259.)

If the object and meaning of the two statutes are the same, then it follows that the judgment in question is as absolutely fraudulent as against a subsequent *bona fide* purchaser, as against a subsequent judgment creditor.   The right of the former to be relieved against it is as perfect as that of the latter.

It is settled that a judgment creditor may obtain relief against such a judgment by *motion*.   (Chappell *v.* Chappell and Dunham *v.* Waterman, *Supra.*)   Relief is granted on *motion*, because that is held to be an appropriate proceeding to obtain such relief ; and because a judgment creditor is a person whom the statute was passed to protect.

But when it is once conceded, or is established, that a *bona fide* purchaser is protected by it equally with a judgment credi-

tor, no good reason can be assigned why the former should not be relieved by the same kind of proceeding in which relief will be granted to the latter.

The general rule is, that no one except a judgment creditor can come into court to obtain relief against a transfer made or judgment confessed by his debtor, as being a fraud upon creditors. The general rule is, not that a creditor at large cannot obtain relief by motion which he might, in such a case, obtain by action, but that he cannot be heard at all. But a party who, by statute, is entitled to particular relief, can obtain it by motion, when that is a proceeding in which it is proper for the court to examine the matters to be considered, and to grant the desired relief, provided the moving party is entitled to it.

If a *bona fide* purchaser for a valuable consideration cannot obtain relief by motion, it is not apparent that he can obtain any by action. The objection that he is not a judgment creditor, if of any force, is as fatal to his right to maintain a suit as to make a motion. If held a fatal objection to his right to maintain an action, it must be on the ground that the statute was not designed for his protection.

The act of 1818, in terms, protected him as fully and absolutely as it did a judgment creditor. In that respect it created an exception to the general rule—that no person, except a judgment creditor, can institute a suit to set aside a transfer, or charge made, or created by a debtor, in fraud of his creditors.

But if the object and meaning of the provisions of the Code, now under consideration, are the same as that of the act of 1818, the purchaser should be permitted to resort to the same remedies as the judgment creditor. A proceeding, by motion, to set aside an unauthorized judgment, may always be taken by any person, whose right to be relieved against it is absolute and perfect.

If the judgment could be treated as absolutely void for defects appearing on its face, so that a purchaser at a sale under an execution issued on such a judgment could not acquire any title, it might not be necessary for the protection of a *bona fide* purchaser that it should be vacated. But that view would apply with equal force to a judgment creditor, and if entitled to consideration, would tend to the conclusion that the interposition of the court was not required for the protection of either.

But the courts have not acted on that view of the matter, when a subsequent judgment creditor has moved to vacate such a judgment. We think the true view is, that a subsequent *bona fide* purchaser, for a valuable consideration, is entitled to the same relief, and may obtain it by the same mode of procedure, as a subsequent judgment creditor. And that as Pohlman's character as such a purchaser is not questioned, it was proper to grant to him, upon motion, the relief to which he is entitled. (Martin *a.* Martin, 3 *Barn. & Ad.*, 934; Reed *a.* Bainbridge, 1 *South.*, 351; Bonnell *a.* Henry, 13 *How. Pr. R.*, 142; Barrow *a.* Bispham, 6 *Halst.*, 110; Howland *a.* Ralph, 3 *Johns.*, 20; Mead *a.* Brinkerhoff, 3 *Johns. Ch. R.*, 329.)

The authorities cited in the opinion of Judge Hoffman, in connection with those to which we have referred, seem to us to sustain the practice pursued in this case. The order, therefore, will be so modified as to set aside the said "execution," and all proceedings had under it, "so far as they relate to or affect the said real estate," and in all other respects will be affirmed, with $10 costs.

HOFFMAN, J.—The principal question is—Can a purchaser, for a valuable consideration from a judgment debtor, without actual notice of the existence of a judgment by confession, but misled, after due diligence, into a belief that it did not exist, obtain relief upon motion against such a judgment, on the ground of its being fraudulent and void?

The judgment in the present case is undoubtedly void as to every person entitled to question it. The statement is insufficient, and such as to render the confession totally inoperative, and liable to be deemed and adjudged fraudulent as to *bona fide* judgment creditors. "The condition precedent on which a confession can alone be supported, has not been complied with." (Dunham *a.* Waterman, Ct. of App., 6 *Abbotts' Pr. R.*, 257; Chappell *a.* Chappell, 2 *Kern.*, 215.)

The third chapter of title 12 of the Code, under the head of "Confession of Judgment without Action," prescribes in what cases the confession may be made (§ 382); the essential particulars of such statement; and that it should be verified and filed (§§ 383, 384). It is silent as to the parties who may take ad-

vantage of any omission or violation of the requisites of the statement, or of other directions.

The statutory provisions of 1813 and of 1830 regulated the course upon confessions to a certain extent; but are equally silent as to the parties entitled to interfere, or as to whom the defective statement shall be void. (1 *Rev. Laws*, 416, § 3; *Ib.*, 501, § 5; 2 *Rev. Stats.*, 1830, 360, § 10.)

In 1818 it was enacted, that if the plaintiff, in any judgment by confession on warrant, omitted to file the specification or statement therein prescribed, "such judgment should be deemed and adjudged to be fraudulent as respects any other *bona fide* judgment creditors, and every *bona fide* purchaser for valuable consideration." (*Laws of* 1818, *ch.* 259, § 8.)

I have found the following cases expounding or depending upon this act: Lawless *a.* Hackett, 16 *Johns. R.*, 149; White *a.* Williams, 1 *Paige's R.*, 506; Brinckerhoff *a.* Marvin, 5 *Johns. Ch. R.*, 320; Seaving *a.* Brinckerhoff, *Ib.*, 329; and James *a.* Morey, 2 *Cow.*, 246.

A purchaser under a junior judgment was held within the act. (1 *Paige*, 506.) And a voluntary assignee for the benefit of creditors generally, was held not within it. He was not a purchaser for a valuable consideration, in the sense of the act. The term purchaser was used in its common and popular sense. (5 *Johns. Ch. R.*, 329.)

In James *a.* Morey, Justice Woodworth considered that a mortgagee was a purchaser under the act; and Chief-justice Savage held otherwise. The former was of opinion that notice of the judgment was of no importance. The party had a right to consider it fraudulent. If notice of such a judgment was a substitute, the statute would be a nullity.

It has escaped attention (as far as I am aware) in all the cases, that this statute was repealed in 1821. (*Sess. Laws*, 9 *Feb.*, 1821, *ch.* 38.) It was also repealed in the general repealing act of 1828. (3 *Rev. Stats.*, 140, § 265.) And Chief-justice Savage remarks, that " when the courts carried it so far as to require every item of the plaintiff's demand to be stated in the specification, the Legislature seems to have considered the remedy worse than the disease, and repealed the act." (2 *Cow.*, 314.)

Yet we find it to be settled law by the cases in the Court of

Appeals referred to, that the object of the Code and of the statute of 1818 was the same; that the particularity exacted by the latter is requisite under the former, and that a judgment confessed without a compliance with the provisions is as void and fraudulent under the Code, as it was under the statute. As to whom it is so void is left an open question, except as to judgment creditors.

Whatever may have been the motives for repealing the act of 1818, the question remains,—Did the statute give originally to *bona fide* purchasers a right which they never possessed before, or upon general principles would not possess, to interfere with and procure the cancelment of a judgment fraudulently confessed; or was the statute only an enumeration of those who, being entitled before upon general principles, should be entitled under the act, when its requirements were neglected or violated?

In my judgment the latter is the true conclusion, and is warranted by settled principles and authorities of the common law.

The writ of *audita querela* was anciently the mode of obtaining relief against judgments, either by a party to the record upon matter which he could not have pleaded, or by strangers. (5 *Taunt.*, 558; 2 *Bing.*, 41; 2 *Johns. Cas.*, 258; *Ib.*, 227.) So late as 1824 it was said by Best, J., that it was neither an obsolete nor difficult proceeding. (2 *Bing.*, 41.)

But it has been superseded to a great extent, if not entirely, in our State, by a motion to vacate the judgment; upon which, whenever the question of fact is not clear, an issue may be directed. In Wardwell *a.* Eden (2 *Johns. Cas.*, 258), however, the Supreme Court left the party to his writ of *audita querela* in a case of disputed fact. And in Brooks *a.* Hunt (17 *Johns. R.*, 484), it was said not to be an uncommon thing to refuse the relief in a summary way on motion, and to put the party to this writ.

Now, it was settled at the common law, that if one man acknowledge a statute merchant or statute staple to another, who afterwards *releases it*, and the conusor aliens his land to a stranger, the stranger may have *audita querela* against the conusee after execution sued out, though not before. (17 Ed. III., 27 *b*, cited 3 *Viner's Ab.*, 321, with other cases from the year-books.) These authorities are recognized in Waddington *a.* Vredenbergh, 2 *Johns. Cas.*, 229.

Kendall *a.* Hodgins.

So a purchaser could have this writ to compel a judgment or statute creditor to comprise in his extent, every parcel of land bound by the judgment or statute, although in the hands of various feoffees or *ter-tenants.* He was to make the debt out of the rents and profits; and the various holders under the conusor or judgment debtor were thus, by the common law, made to contribute proportionately to the payment. (*Brookes' Ab. Tit., Audita Querela; Coke's R.,* 3, 14 *b.; Viner's Ab., vol.* 3, *p.* 339, *fol.* 9; *Ib.,* 343, *fol.* 5; *Ib.,* 349 *M. fol.* 1.)

The statute 16 and 17 Car. II., cap. 5, made perpetual by 22 and 23 Car. II., cap. 2, recited this to be the rule of the law, and provided that where a judgment, statute, or recognizance had *been extended,* it should not be avoided or delayed, because part of the lands extendible were omitted out of the extent; saving, however, to the party whose lands were extended, the right of contribution from those whose lands were omitted.

In Prynne *a.* Stoughton (2 *Vent.,* 104), it was held that the statute only applied when the extent had been executed, and the ter-tenant brought *audita querela.* But it did not apply before execution; and hence upon a *scire facias* to revive a judgment, one ter-tenant could plead that others were not warned.

So in one of the cases cited in the abridgments before referred to, it was held that this writ did lie on behalf of an alienee of a conusor in a statute staple, to compel the conusee to extend lands still held by the conusor, before his own could be resorted to. And this ancient authority is the foundation of the rule now settled, that a Court of Chancery will compel the sale of premises subject to an incumbrance, in the inverse order of alienation. (Clewes *a.* Dickenson, 5 *Johns. Ch. R.,* 239; Gouverneur *a.* Lynch, 2 *Paige,* 300; Aichen *a.* Maclin, 1 *Drury & Walsh,* 621.)

Nothing can be more striking than these old authorities, to show a preventive power in a court of law, through the medium of its own process, to avert the infliction of a wrong upon even third parties, by color of its own judgments, or executions under them, or under instruments, to enforce which, process from the court must be resorted to.

In Harrod *a.* Benton (8 *Barn. & Cress.,* 217), Lord Tenterden said: "I think the court has a jurisdiction over a warrant of attorney, which it may exercise at the instance of any party

who has an interest in supporting it or setting it aside." The applicant was, it is true, an execution creditor.

In Martin a. Martin (3 *Barn. & Adol.*, 934), a landlord was allowed to impeach a judgment confessed by a mother-in-law to her son-in-law. There was misrepresentation and deceit on the part of the debtor and creditor, which induced the delay of a distress. TAUNTON, J., said : "I also doubted whether we could interfere at the instance of a third person, but I think in this case the court may do so by virtue of its general jurisdiction over warrants of attorney, and because this is a fraudulent transaction. The landlord by his lien would have been quasi owner of the property, and in that respect he may be considered for the present purpose as representative of the debtor."

In Reed a. Bainbridge (1 *South. R.*, 35), it was expressly decided that such an application may be made on behalf of a *bona fide* purchaser from the judgment debtor.

In South Carolina there is a statute that confessions may be taken before a clerk in a manner prescribed, and judgment entered thereupon. It is then provided that every *person aggrieved* by such confession may file a suggestion and impeach the judgment. In Sutton a. Pettus (4 *Rich. R.*, 163), it was held that a purchaser from the judgment debtor was within the act.

In both these cases, that of Howland a. Ruth (3 *Johns. R.*, 20) is referred to as an authority that a purchaser could have this redress. McNee was there a purchaser from the defendant, the judgment debtor, by deed in 1804. A judgment was docketed in favor of the plaintiff in 1803. The motion was to set aside the execution on the ground of the debt being paid, and that the judgment was collusively kept in force. The affidavits of the plaintiff met these charges fully, and insisted that the bond was still lawfully due. The court disposed of a question of regularity against McNee, and then said that if there was fraud (and there was color for the suggestion on the affidavits), he was undoubtedly entitled to relief. But it could not interfere effectually upon the present motion. The sheriff had sold under the judgment, and an order staying the delivery of the deed had been made.

This was extended to the next term, "so as to give McNee an opportunity to apply in the mean time to the Court of Chancery for relief, or to put the question of fraud and collusion in a train for trial at law, by an issue in fact."

This case fully sustains the right of a purchaser to affirmative relief in some form, and indicates strongly that it can be had by an issue directed in the court of law.

Swan *a.* Saddlemire (8 *Wend.*, 676) determined that case will lie by a purchaser against the plaintiff and defendant in a judgment for fraudulently setting it up as unsatisfied, when it was paid, and causing an execution to be issued thereon against the land of the purchaser.

In Nusbaum *a.* Keim (7 *Abbotts' Pr. R.*, C. P., Gen. T.), it was held, that a judgment founded upon an insufficient statement was void as to the debtor's grantees, although it might be valid as to the debtor himself. The case arose upon an action by the judgment creditor to set aside a conveyance of real estate as fraudulent, and the complaint was dismissed.

In Bonnett *a.* Henry (13 *How. Pr. R.*, 142), Mr. Justice Harris states that he does not understand the right to have an illegal judgment removed, to be confined to a judgment creditor. Of course he was not merely intimating that other creditors possessed it.

It is true that the same careful judge held in Beekman *a.* Kirk (15 *How.*, 230), that a voluntary assignee for creditors at large could not resort to such a motion. But there appears to me to be a marked and important distinction between such an assignee and a purchaser for valuable consideration; and that the learned judge would be wholly free from inconsistency if he granted the relief on behalf of the latter. Indeed, Chancellor Kent, in a case before cited, arising under the act of 1818, takes and acts expressly upon this distinction. (Seaving *a.* Brinckerhoff, 5 *Johns. Ch. R.*, 329.)

It is urged that the grantee of a judgment debtor can stand in no better position than his grantor; and hence, upon the concession that the debtor was bound by the judgment, the grantee cannot impeach it.

But in numerous instances a *bona fide* purchaser has a better standing, and is entitled to higher rights and immunities than his grantor, or volunteers under him possess.

Under the statute of 27 Elizabeth, it is the received English rule to this day, that a purchaser for valuable consideration, even with notice of a prior voluntary deed, acquires the better title, and can set it aside. (Cathcart *a.* Robinson, 5 *Pet. U. S.*

*R.*, 264; Newman *a.* Bushman, 9 *Eng. L. & Eq. R.*, 410.) The rule as laid down by the Supreme Court of the United States is, that the voluntary conveyance is presumptively fraudulent in favor of a subsequent purchaser without notice. The presumption there was not repelled.

Now, under either rule, the grantor himself could not set aside the conveyance; neither could his heir or devisee. (Jackson *a.* Garnsey, 16 *Johns.*, 189; Anderson *a.* Roberts, 18 *Ib.*, 175.)

So a grantee in a subsequent voluntary deed cannot avoid a prior voluntary grant (*Roberts on Fraudulent Con.*, 646); and it is held in the Queen's Bench that a purchaser from an heir or devisee of the grantor could not avoid the voluntary grant of the ancestor. (Newman *a.* Bushman, 17 *Queen's B. R.*, 723.) Yet it is clear that a purchaser for value from a voluntary grantee becomes vested with a better title than his grantor, and renders the voluntary deed in effect a purchase. (*Ib.*)

It is justly observed by Judge Sutherland, that "a voluntary conveyance is a deed without any valuable consideration, and the character of *purchase or voluntary* is determined by the fact whether any thing valuable passed between the parties." (4 *Wend.*, 304.)

Again: a deed may be assailed as fraudulent in fact by a *bona fide* purchaser, while it remains valid as to the grantor and his heirs. (Wadsworth *a.* Havens, 3 *Wend.*, 411.)

*And so*, a purchaser for valuable consideration, without notice, acquires a title, although he buy of one who obtained a conveyance by fraud, and had no title. (Jackson *a.* Walsh, 14 *Johns. R.*, 407.)

These examples show how extensively the law protects and aids a *bona fide* purchaser, when his grantor would be left without redress.

It is true that in the vast majority of cases such applications are made on behalf of judgment creditors. But many circumstances will account for the infrequency of a motion by a purchaser. He is usually apprised by his searches of judgments, and procures their removal, or regulates his purchase money accordingly; or if in possession, is content to wait and resist any action on the part of the judgment creditor.

It is an argument of no little weight against this application

Kendall *a*. Hodgins.

that the invalidity of the judgment appears upon its face, and that the power of a court of equity cannot be invoked to remove or cancel an instrument so void, upon the ground of its being a cloud upon the title. (Craft *a*. Merrill, 14 *N. Y. R.*, 456; Heywood *a*. The City of Buffalo, *Ib.*, 542; Ward *a*. Dewey, 16 *Ib.*, 520; Nott *a*. Onderdonk, 14 *N. Y. R.*, 9.)

But if this doctrine is applicable to motions to set aside judgments, under the common-law power of a court over its records, it would be in general as applicable when a junior judgment creditor moves as in other cases. Particularly would it be so when a purchaser under a junior judgment applies, who, it has been held, may do so. (1 *Paige*, 506, before cited.)

I apprehend that an exception to this rule exists in the case of judgments, and upon the principle, that a court possesses power and control over its own records, so that it may always remove and cancel them when they are fraudulently obtained or supported, and when innocent parties are aggrieved by them, who have not become expressly, or by clear legal implication, bound by them. (20 *Johns. R.*, 296; 2 *Johns. Ch. R.*, 144; 12 *Wend.*, 222; 5 *Johns. Ch. R.*, 324; 9 *Johns. R.*, 80; 6 *Halst. R.*, 110; Reading *a*. Reading, 4 *Zabr. R.*, 361.) When the facts are plainly made out, the court decides at once; when they are doubtful and contested, an issue is directed. Section 72 of the Code, abolishing feigned issues, sanctions such a course in the form there prescribed.

My conclusion is, that the order should be affirmed, with the modification that the execution and levy be set aside only so far as relates to the premises in question.