Bosworth, Ch. J.
By the judgment appealed from, it is adjudged that the claims of the several parties to the proceeds of the Alida (which may remain after satisfying the sum directed to be paid to and retained by the Receiver,) rank in the order of priority as follows:
1. Abraham Van Vechten’s for $5,545, and interest from July 29th, 1854, as due on the Drew mortgage, (being a mortgage dated October 30th, 1852, and executed by William Masten, N. Elmendorf and M. Schoonmaker to D. Drew.) This was recorded in the custom-house, November 2d, 1852, and was filed in the town where the mortgagors resided, and a copy of it was refiled October 25th, 1853, but not subsequently.
*389 2. James H. Elmore’s for $1,000, and interest from the 16th September, 1855, on a mortgage executed to him by John Van Vechten, dated September 15th, 1855, which, on the day of its date, was recorded in the proper custom-house, and was filed in the town where the mortgagor resided.
3. Prosper P. Shaw’s for $12,000—and interest from the 25th February, 1854, on a mortgage of that date executed to Shaw by N. Elmendorf, and recorded at the custom-house in New York city on the day of its date, and filed in the town where the mortgagor resided on the 12th July, 1854, but of which no copy was subsequently filed.
4. Marius Schoonmaker’s for $2,958.77, and interest from the 14th September, 1855, as the amount due on the Westchester County Bank judgments which were recovered the 16th March, 1855, against N. Elmendorf, one DeMeyer and John Van Vechten, executions whereon were issued to the Sheriff of New York on the 17th of March, and levied the same day on the Alida. The judgments were assigned September 15th, 1855, by the bank to M. Schoonmaker, there being then due thereon $2,958.77.
5. The plaintiff, for the amount due on his mortgage and costs. The mortgage is dated the 21st of March, 1855, is executed by John Van Vechten, is conditioned to pay $16,000, and was found to be usurious. This mortgage was not filed in the town where the mortgagor resided, but was recorded in the proper customhouse.
6. Marius Schoonmaker, for the amount due on his judgment against Nicholas Elmendorf, which judgment was entered March 30th, 1855 for $17,931, by confession without action under sections 382, 383 and 384 of the Code, in a form held not to satisfy the requirements of the Code.
7. John Griffiths, for the amount due on his judgment and costs recovered November 15th, 1854, against John Van Vechten and DeMeyer, on which execution was issued and levied November 16th, 1854, by the Coroner of Ulster county; but the execution and levy were subsequently abandoned by direction of Griffiths.
The facts affecting the validity of these claims and their right to priority, will be stated with more particularity (as they were found at Special Term,) before discussing the rules of law by *390 which the questions relating to the validity and priority of the claims are controlled.
1. William Masten, N. Elmendorf, and M. Schoonmaker, bought the Alida, of Drew, October 30, 1852, and to secure the payment of their three notes of $10,000 each, given for the purchase-money, executed to Drew a mortgage of the Alida, which mortgage was recorded in the Custom-House in New York, on the 2d of November, 1852, and was also filed in the office of the Clerk of the county of Ulster, his office being in the town in which the mortgagors resided. A copy was again filed on the 25th of October, 1853, with a statement of the amount claimed to be due thereon, and no copy has been since filed.
2. On the 9th of, January, 1854, Hasten and Schoonmaker sold all their interest in the Alida to Elmendorf, and executed to him a conveyance thereof, which was recorded in the Custom-House at New York, on the 25th of April, 1854, and on that day she was enrolled in his name as sole owner.
3. On the 25th February, 1854, Elmendorf mortgaged the boat to Shaw, to secure the payment of $12,000, and interest. The mortgage was filed in the Custom-House in New York City on the same day (February 25th, 1854,) but was not filed in the Clerk’s office in Ulster county, until the 12th of July, 1854, and no copy of it was subsequently refiled. Shaw had notice of the mortgage that had been executed to Drew at the time of the mortgage to himself. In other respects it was taken in good faith and for value parted with on its credit.
4. John Griffiths, the Sheriff of Ulster county, levied upon the Alida, on the 4th of Hay, 1854, under executions issued upon several judgments, some of which were recovered against Elmendorf as sole defendant, and others were recovered against him and other persons as defendants, William Hasten and H. Schoonmaker being defendants in some of such judgments.
5. On the 28th of June, 1854, Drew assigned his mortgage to A. A. Dunlop, who on the same day employed J. T. Stewart, a Deputy Sheriff of New York city and county, to foreclose said mortgage as his agent, and the agent advertised the boat for sale at Kingston, Ulster county, on the 17th of July, 1854, on which day there was due on this mortgage $7,454TW
*391 6. The Sheriff of Ulster county had advertised the boat to be sold at Kingston, on the 17th of July, 1854, by virtue of the executions which he had levied on the 4th of May, 1854, and on that day he sold her on such executions to John Van Vechten, for $19,000, he being the highest bidder, and took the note of Van Vechten and one DeMeyer for the amount of the said bid. At the time of and prior to the sale, Dunlop’s said agent announced publicly that after the Sheriff’s sale was made, he should sell the Adida on the Drew mortgage, and said Shaw announced the existence of his mortgage and his claim under it. The sale by the Sheriff of Ulster, was, in terms, subject to the mortgage to Drew, and to all liens prior to those acquired by his levies.
7. On the 17th of July, 1854, immediately after the sale by the Sheriff of Ulster, John Van Vechten paid to Dunlop’s agent $7,454.XW the amount due on the Drew mortgage, and took an assignment of the mortgage and of the demands thereby secured, and on the 29th of July, 1854, John Van Vechten assigned the said mortgage to Abraham Van Vechten, to secure the payment of $5,545, of which amount the latter loaned the former on the 18th July, 1854, the sum of $1,795, and the balance thereof on the 29th July, 1854.
8. John Van Vechten, took possession of the Alida immediately after the sale; and a bill of sale from Elmendorf to him dated February 7th, 1855, was recorded in the New York Custom-House on the 17th of February 1855, and a bill of sale from the Sheriff of Ulster county, to John Van Vechten was recorded in the New York Custom-House on the 20th of March, 1855. It had no date but its execution was proved on the 16th of that month.
9. On the 16th of November, 1854, the Coroner of Ulster county levied upon the boat, an execution in favor of John Griffiths against John Van Vechten and one DeMeyer, issued on a judgment recovered against them on the 15th of said November, for a balance due on the note given by them to Griffiths, for the payment of the sum at which Van Vechten bought the boat at the Sheriff’s sale aforesaid. The boat remained in the Coroner’s possession until the 7th of December, 1854, when John Van Vechten took possession and removed her to New *392 York, where she remained and was levied on by the Sheriff of Hew York, on the 17th March, 1855.
10. On the 17th of March, 1855, the Sheriff of Hew York levied on the boat, executions issued on that day, on judgments recovered on the 16th March, 1855, by the Westchester County Bank against John Van Vechten, H. Elmendorf and DeMeyer, and the Alida continued in the possession of the said Sheriff until after this action was commenced, and until the United States Marshal took possession. In the meantime these judgments were assigned to M. Schoonmaker, September 15th, 1855, there being then due thereon $2,958. T\V
11. On the 21st of March, 1855, John Van Vechten mortgaged the boat to George J. S. Thompson, the plaintiff in this suit, to secure the payment of $16,000 and interest. This mortgage was never filed in the town where the mortgagor resided, but was recorded in the Hew York Custom-House. The plaintiff at the time had notice of the Drew mortgage held by Abraham Van Vechten. The mortgage to the plaintiff was given to secure a usurious loan from Thompson to John Van Vechten.
12. On the 30th March, 1855, H. Elmendorf confessed a judgment without action to the said Schoonmaker for $17,931, on which an execution was issued and delivered to the Sheriff of Hew York on the 12th April, 1855; the Sheriff declined to sell the Alida upon it, unless indemnified, and no indemnity was tendered. This judgment was held to have been entered without a compliance with the requirements of the Code in that behalf.
13. On the 15th of September, 1855, John Van Vechten mortgaged the Alida to James H. Elmore, to secure the payment of $1,000. The mortgage was filed the same day in the county where the mortgagor resided, and was also recorded in the Hew York Custom-House. Elmore had at the time actual notice of the plaintiff’s mortgage. The mortgage was executed to secure the payment of $1,000, which Elmore had loaned to John Van Vechten on the 19th July, 1855.
These are all the facts found which it is deemed necessary to state assuming the purchase by John Van Vechten to have been honest and valid. It may be mentioned in this connection, however, that such purchase is found to have been made for the use and benefit of H. Elmendorf, and that the money paid to Dunlop *393 on the assignment of the Drew mortgage was- furnished by said Elmendorf, and that all the moneys paid to the Sheriff of Ulster on the note given for the amount of John Yan Yechten’s bid, except the $3,750 advanced by Abraham Yan Yechten on the 29th of July, 1854, were also furnished by N. Elmendorf, and that the use of John Yan Yechten’s name as purchaser of the boat and of the Drew mortgage, was a cover to protect the boat against the creditors of N. Elmendorf.
The rights of the parties will be considered, first, on the assumption that John Yan Yechten’s purchase was honest and valid, and is to be so treated, as to all persons who are Iona fide mortgagees of the boat under mortgages executed by him, while he was in actual possession and had the regular paper title.
In discussing the rights of the parties on this assumption, such other of the facts as affect these rights will be stated.
On this assumption and on the facts as found—
Abraham Van Vechten’s right is prior in date to that of either of the other claimants. At the time the Drew mortgage was assigned to him, (the 29th of July, 1854,) it was and had been duly filed, and a copy of it had been last filed on the 25th of October, 1853. Shaw, Elmore, and the plaintiff, at the time they severally took the mortgages under which they now claim, had notice of the mortgage which Abraham Yan Yechten now holds and which for brevity I call the Drew mortgage. It is clear, therefore, that their claims must be postponed to Abraham Yan Yechten’s, (Hill v. Beebe, 3 Kern., 556,) assuming the Drew mortgage to be a subsisting security. It follows that the only other claimants who can contest his priority of right are M. Schoonmaker, as assignee of the Westchester County Bank, and John Griffiths.
Griffiths’ claim is prior in date to that of M. Schoonmaker. Griffiths’ claim is based on a levy made November 16, 1854, of an execution against John Van Vechten and one DeMeyer; and M. Schoonmaker’s said claim is based on a levy made March 17, 1855, of two executions against John Van Vechten, DeMeyer and N. Elmendorf. It is found as a fact, that the Coroner of Ulster county had possession of the Alida under the levy of Griffiths’ execution from November 16 to December 7, 1854; that on the 7th of December, the boat was taken to and kept at the city of *394 New York until the 5th of May, 1855, and. while there, and in March, 1855, was levied upon by the Sheriff of New York by executions on the judgments in favor of the Westchester County Bank, (which judgments are now owned by M. Schoonmaker as assignee,) and that John Van Vechten subsequently, by the allowance of the Sheriff of New York, took her back to Ulster county, and she made daily trips between Kingston Ulster county, and New York, from May, 1855, until September 15th, 1855, and that “the Coroner did not resume his levy upon the vessel after she returned to Ulster county, but by the directions and instructions of Griffiths, abandoned his levy and did not make any effort thereafter to interfere with the boat.”
On this state of facts, it is obvious that Griffiths lost all claim by virtue of the levy, not only as between himself and M. Schoonmaker, but as against Abraham Van Vechten. The levy having been in fact abandoned, it ceased to be a lien upon the Alida, or upon the proceeds of a sale made subsequently to such abandonment As between A. Van Vechten and Griffiths, it may also be observed that the note on which Griffiths’ judgment was recovered was taken by him for the amount of the purchaser’s bid at the sale of the Alida, made by him as such Sheriff, on the 17th day of July, 1854, and was a sale made in terms subject to the Drew mortgage. I do not think that a Sheriff, who becomes a creditor under such circumstances by taking a note of the purchaser instead of cash, as his duty required him to do, is entitled as between himself and a mortgagee, subject to whose mortgage such sale was made, to be considered a creditor who can question the validity of such mortgage on the mere ground that it was not refiled as required by law. But this point need not be determined, as Griffiths’ execution and the levy under it were abandoned by his directions; after such abandonment his lien was at an end.
The only claimant (if the views already stated be correct,) who can question Abraham Van Vechten’s right to priority is M. Schoonmaker.
In March, 1855, when the Sheriff of New York levied upon the Alida, she was in the possession of John Van Vechten, and from May 5th, to September 15th, 1855, she continued in his actual possession, and was run by him .daily between Kingston *395 and Hew York, though she may have been in the constructive possession of the Sheriff of the county of Hew York, so that he could have stopped her at any time and sold her before she was seized by the United States Marshal.
If the mortgage under which A. Van Vechten claims had been made by John Van Vechten and a year had elapsed from the time of filing it, before the executions on the judgments in favor of the Westchester County Bank had been levied, or while the levy under them was in force, the mortgage would have become invalid as against such judgments. (Ely v. Carnley, 19 N. Y. R., 496.) To have avoided such a consequence, a copy of the mortgage must have been refiled within the time prescribed by law, or the holder of the mortgage must have taken possession of the vessel before he was in default by reason of not having refiled a copy of the mortgage with a statement of the amount due.
But the mortgagors in the Drew mortgage were William Masten, Hicholas Elmendorf and Marius Schoonmaker, and neither of them was in the actual possession of the Alida after the 17th July, 1854. Long before the Westchester County Bank recovered judgments against N. Elmendorf, DeMeyer and John Van Vechten, (which was on the 16th March, 1855,) the title of H. Elmendorf had been divested by the Sheriff’s sale made on the 17th July, 1854, to John Van Vechten, who, from the time of his purchase, was in actual possession of the Alida until she was seized by the United States Marshal, except the brief period during which his actual possession was interrupted by the Coroner of Ulster county, as already mentioned. When that sale was made to John Van Vechten, the time had not arrived when it was necessary to refile a copy of the Drew mortgage. It was in time to refile such copy and the prescribed statement as late as the 25th day of October, 1854.
On the 28th day of June, 1854, the then holder and owner of the Drew mortgage took all the possession of the Alida which could practically well be had, and advertised that she would be sold on the 17th July, 1854, that being the day she was advertised to be sold by the Sheriff. The Sheriff, who had actual possession, seems to have admitted the prior claim of the owner of the Drew mortgage and to have held the boat subordinate to his claim, and in that sense to have held possession for him *396 as well as under his levies, for he announced when he exposed the boat to sale that the sale would be made subject to the Drew mortgage. The boat was then delivered to John Yan Yechten, as purchaser at the Sheriff’s sale and as assignee of the Drew mortgage. The title of Elmendorf was thereby divested as to all general or judgment and execution creditors, and the person who acquired it having taken possession as assignee of the Drew mortgage, long before it was necessary to refile a copy of the mortgage with the requisite statement, did by that act all that (Ely v. Carnley, 19 N. Y. R., 496,) intimates it was material for him to do, to save the Drew mortgage from forfeiture in consequence of not refiling it.
The assignment of the Drew mortgage to Abraham Yan Yechten, as an assignee in good faith and for value, should protect him against the claims of the Westchester County Bank as a creditor of N. Elmendorf by virtue of judgments recovered on the 16th of March, 1855, some eight months subsequent to the time when the title of N. Elmendorf as owner had been extinguished by the Sheriff’s sale on the 17th July, 1854, and a still longer period after his possession of the Alida had been terminated by her being taken by the Sheriff of Ulster on the 4th of May, 1854. The statement of the facts found by the Court does not disclose the nature of the liabilities on which the Westchester County Bank recovered its judgments, nor when they arose. There is, therefore, nothing in the facts found indicating that the Westchester County Bank was a creditor of N. Elmendorf while he had any interest in, or was in possession of, the Alida, assuming John Van Vechten’s purchase to be honest and valid.
The omission to file a copy of the Drew mortgage within thirty days next preceding the expiration of the year commencing October 25, 1853, only makes it invalid, after such omission has occurred, as against creditors of the mortgagors and subsequent purchasers and mortgagees in good faith. (3 R. S., 5th ed., p. 228, §11.) As a creditor of John Van Vechten, the Westchester County Bank cannot allege that the Drew mortgage has thus become invalid; for he is not a mortgagor named in it. Nor can a creditor of Nicholas Elmendorf claim it to be invalid, as the Bank is not found to have been a creditor until long after his possession of it and of his interest in it had been extinguished. I think, *397 therefore, that the judgment declaring Abraham Van Vechten’s priority is correct upon the facts found, if it can be treated as a subsisting security. In coming to this conclusion, I assent to the view taken by my brother Hoffman, at Special Term, of the force and effect of the act of Congress, (U. S. Stat. at Large, vol. 9, p. 440,) and must assume that Abraham Van Vechten’s rights are the same as if it were conceded that John Van Vechten bought in good faith and solely on his account.
Assuming John Van Vechten’s purchase to have been honest and valid, it is difficult to comprehend on what principle Shaw could claim, under his mortgage against John Van Vechten. The executions on which the boat was sold were actually levied as early as the 4th of May, 1854. All of these executions were on judgments against N. Elmendorf. Shaw’s mortgage being made by N. Elmendorf, and not having been filed when the executions were levied, it was absolutely void as against the plaintiffs in such judgments. It must be true that any person purchasing at such sale Iona fide, (unless the bona fid.es of the purchase would be affected by notice of Shaw’s mortgage and of his claim under it,) would acquire a title unaffected by such mortgage.
But such a purchaser, buying expressly subject to the Drew mortgage, and having notice of Shaw’s claim, might properly, for greater security, take an assignment of the Drew mortgage, so as to protect himself against Shaw’s claim to the extent of the sum paid for the assignment of it, which is more than sufficient to cover Abraham Van Vechten’s claim.
John Van Vechten having taken such an assignment of it, his assignee of it, being an assignee in good faith and for value, should also be protected as against Schoonmaker, a subsequent creditor of U. Elmendorf, whose right to relief depends upon proof of the fact that John Van Vechten’s purchase was in fact made for the benefit of Elmendorf.
The position of such an assignee should be regarded as favorably as if John Van Vechten’s purchase had been, in fact and intent, what it was in form, and appeared and was believed to be, when his assignee of the Drew mortgage took it and advanced upon it, as against one not a creditor of N. Elmendorf until after such assignment was made.
*398 But the further facts are found, that all the notes, (including notes made in renewal thereof,) which the Drew mortgage was executed to secure, had been paid prior to the 29th of October, 1853, except the note at eighteen months, and this fell due April 29, 1854, exclusive of the days of grace.
That, as part of the terms of the sale and transfer by Hasten & Schoonmaker of their interest in the Alida to N. Elmendorf, on the 9th of January, 1854, he agreed to pay all the debts of the firm of Masten & Company, (the eighteen months’ note above mentioned being one of such debts.)
That “ the purchase made by John Van Vechten at the Sheriff’s sale on the 17th of July was not a purchase in good faith on his own account, but was made for the usé and benefit of Nicholas Elmendorf, and was fraudulent and void as to the creditors of the latter.”
That the money which was paid to the said Dunlop and the Deputy, Stewart, was the money of the said Elmendorf.
That Abraham Van Vechten, in making the loans which it is found he did make to John Van Vechten, and in taking an assignment of the Drew mortgage, “ acted in good faith, and is not chargeable with notice of the arrangement (above) mentioned between Elmendorf and John Van Vechten under which the latter bought the Alida at the Sheriff’s sale.” In this connection it should be borne in mind that the only note remaining unpaid at the time óf the assignment of the Drew mortgage to A. Van Vechten, which that mortgage was made to secure, was then three months overdue, and it is not found as a fact that such note was assigned with the mortgage.
But assuming that it was, it had been in fact paid on the 17th July, 1854, by N. Elmendorf with his own money—as between him and his co-makers, Hasten & Schoonmaker, it was his duty to pay it — as to them it was actually extinguished, and was a nullity in the hands of John Van Vechten.
Abraham Van Vechten having taken an assignment of it after it was due and had been actually paid, could not recover upon it in an action against all the makers. Masten & M. Schoonmaker’s defense to such an action is perfect.
The debt being the principal, and the mortgage the incident, it is not true that the mortgage, when assigned to A. Van Vech *399 ten, was for any purpose, either at law or in equity, a subsisting security for the payment of any such debt as is described in it. There was not then, in legal existence, an eighteen-month note made by Hasten & Company, or by the persons composing that firm. It was then not only dishonored by being past due, but had been extinguished by actual payment. John Van Vechten never had any claim upon it: it was paid when it came to his hands, and had been paid by the maker, whose duty it was to satisfy it.
At and after such actual payment, and thence up to the 27th July, 1855, a period of twelve days—the Drew mortgage had ceased to be a lien on the Alida—and Shaw’s mortgage, became and certainly during that period was, the first lien. (Otter v. Vaux, 39 Eng. Law & Eq. R., 611.)
If A. Van Vechten, by force of the assignment to him, has the better and a prior right, how has he acquired it?
It is by taking the assignment of a mortgage and of a note which it was made to secure some three months after such note had become due, and some twelve days after it had been actually paid, without addressing a single inquiry to either maker of the note or either mortgagor. He necessarily took it, as it seems to me, subject to the equities of all parties having a specific valid lien upon the Alida. He took only such rights as John Van Vechten then had; the note and mortgage in his hands being void, they having been actually paid, and having been transferred to him as a part of the means to be used in the attempt to defraud the creditors of Elmendorf, John Van Vechten, as such holder of the Drew mortgage, had no rights, (Ellis and Wife v. Messervie et al., 11 Paige, 467; S. C., 5 Denio, 640,) and having none, his assignment to A. Van Vechten transferred none.
Of the sum which A. Van Vechten loaned to John Van Vechten, $1,795, was loaned on the 18th of July, 1855; on the day the mortgage was assigned to him he loaned the further sum of $3,750. It is not found that any inquiries were made by Abraham as to the Drew mortgage, or that any representations were made concerning it, but it is simply found that to secure these two sums he took an assignment of the Drew mortgage and received a transfer of 156 shares of stock of Companies which are named.
*400 On the facts found, therefore, A. Van Vechten acquired by the assignment of the Drew mortgage no lien upon the Alida; the mortgage was not a lien ; the lien once created by it had been extinguished, and could not be reinstated to the prejudice of creditors then having a valid specific lien as Shaw had by his mortgage which at that time had been duly filed.
If this view be correct, A. Van Vechten has no claim as against Shaw.
The next question is, has either of the other claimants a right superior to Shaw’s?
In discussing this question the facts as found will be assumed to be correctly found, for the reason that if the judgment appealed from cannot be sustained on those facts, a new trial is unavoidable. The Court at General Term has no power to determine the facts upon a review of the evidence, for the purpose of concluding or with such effect as to conclude the parties by such determination. If the judgment is erroneous the parties appealing are entitled to a new trial, and upon such evidence as they may give the facts must be decided at the Special Term.
Treating John Van Vechten’s purchase as having been made for N. Elmendorf, and as being a fraud upon and void as to the creditors of the latter, (and it is on this ground that Shaw’s mortgage is held to be a subsisting security and entitled to any part of the proceeds arising from the sale of the Alida,) other considerations arise. In that view the Alida was the property of N. Elmendorf, and she was in the possession of his agents— their possession as such agents was his possession. The Westchester County Bank recovered judgments against him in March, 1855, executions issued on those judgments were levied upon the Alida on the 17th of March, 1855, and an omission to refile a copy of Shaw’s mortgage before the expiration of a year from July 12, 1854, would render it invalid as against the Westchester County Bank as a creditor of N. Elmendorf. No copy was refiled within the year, and Shaw did not take possession of the Alida under his mortgage within the year. When the year expired these executions were in the Sheriff’s hands, and the boat was held by virtue of them.
On such a state of facts, Ely v. Carnley (19 N. Y. R., 496,) is an authority in point that Shaw’s mortgage became invalid as *401 against the Westchester County Bank. It necessarily follows that the facts on which Shaw’s mortgage is held to be unaffected by John Van Vechten’s purchase, establish M. Schoonmaker’s title to priority over Shaw.
IH. As between Elmore and Schoonmaker as such assignee, the claim of the latter is prior in point of time. The executions in favor of the Westchester County Bank were levied on the Alida on the 17th of March, 1855, and at the time the mortgage to Elmore was executed, the boat was in the custody of the Sheriff by virtue of said levy, and was advertised to be sold. Elmore loaned to John Van Vechten $1,000 on the 19th July, 1855, upon a verbal understanding that he was to be paid out of the first earnings of the boat, and on the 15th September, 1855,- nearly two months subsequently, the mortgage in question was executed to him by John Van Vechten to secure this antecedent debt. Besides, the boat was at the time under an actual levy and advertised to be sold under such levy. A purchaser' to acquire a title as against an execution issued, must have been a purchaser in good faith before actual levy of the execution. (3 R. S., p. 645, 5th ed., § 17.) Elmore does not occupy the position of a bona fide purchaser and his mortgage was executed after an actual levy. M. Schoonmaker’s claim, as assignee of the Westchester County Bank, is prior to Elmore’s in point of time and in legal right. (Ray v. Birdseye, 5 Denio, 619.)
Besides this, it is found that he knew when he took his mortgage that the boat had been levied on and was advertised to be sold under the Westchester County Bank’s judgments.
And this also is their position as to each other, assuming John Van Vechten’s title under his purchase to be valid, as such executions were against John Van Vechten as well as Elmendorf.
Assuming it to be void and that the boat is in fact the property of Elmendorf, Elmore has no equity superior to Schoonmaker’s as he does not occupy the position of a mortgagee of John Van Vechten for value parted with on the faith of the mortgage and on the faith of John Van Vechten being the true owner. He has parted with nothing on the security of the mortgage. He acquired merely the rights of John Van Vechten, and he had none as against the creditors of Elmendorf, under execution actually levied, Elmendorf being the true owner.
*402 IV. As between Shaw and Elmore, (leaving out of view, for the present, the existence of Schoonmaker’s claim as assignee of the Westchester County Bank,) it must be borne in mind that Shaw’s mortgage is first in point of time. It was recorded, on the day of its date, February 25th, 1854, in the Custom-House in New York, and a copy of it was filed in the town where Elmendorf, the mortgagor, resided, on the 12th of July, 1854. It is found as a fact “ that the said mortgage was made and received for value received and in good faith.”
The omission to refile a copy of it within the time prescribed by statute would render it invalid as against the creditors of Elmendorf, the mortgagor, and as “ against subsequent purchasers and mortgagees in good faith.” Elmore does not claim as a creditor of Elmendorf, nor as a purchaser from or mortgagee of Elmendorf.
The phrase “ purchaser in good faith,” as used in section 17 of 3 Revised Statutes, (p. 645, 5th ed.,) cannot be satisfied unless the person claiming to be such purchaser “shall have parted with something that is valuable upon the faith of his purchase, and before he had notice of such prior right or equity.” (Ray v. Birdseye, 5 Denio, 626.)
If this element be as essential to the character of a mortgagee in good faith “as to that of a purchaser in good faith,” (and I think it is,) then it is clear that Elmore is neither, as his mortgage was taken solely and purely to secure an antecedent debt, and he never parted with anything of value on the faith of his mortgage.
This is the view of their rights as between each other on the facts found, viz.: That the purchase made by John Van Vechten at the Sheriff’s sale on the 17th July was not a purchase in good faith on his own account, but was made for the use and benefit of Nicholas Elmendorf, and was fraudulent and void as to the credi: tors of the latter. Even if it be also true that it was effectual “ to change the title and possession, as between the said John and Nicholas, & as to Iona fide purchasers under John Van Vechten,” Elmore has succeeded merely to such rights as John Van Vechten had, and can assert none which did not exist in his favor as against the creditors of N. Elmendorf.
If these views be correct, it follows that Schoonmaker’s claim (as such assignee) stands first, Shaw’s second, and Elmore’s next, *403 unless some one of them must yield priority to some of the claims yet to be considered.
V. The mortgage executed to the plaintiff on the 21st March, 1855, by John Van Vechten, is, of course, subordinate to Shaw’s, inasmuch as it was taken before it was necessary to refile a copy of the latter, (4 Kern., 71,) and to Schoonmaker’s said claim, because it was executed after an actual levy of the executions issued on the Westchester County Bank’s judgments, (those levies having been made on the 17th March, 1855,) and because it is usurious and void. It is subordinate to Elmore’s, because he is in a position to assail it on the ground that it is usurious and void, and that he has succeeded to all the rights of property of John Van Vechten in said boat.
The judgment confessed to M. Schoonmaker by Nicholas Elmendorf, on the 30th of March, 1855, entirely fails (as the Court at Special Term held,) to comply with the requirements of the Code, and is void as to the Iona fide creditors of Elmendorf, and as to Shaw as being a bona fide mortgagee of the boat. Whether Elmore, as not being a “ purchaser or mortgagee in good faith’’ from J. Van Vechten, and having no claim as a creditor of Elmendorf, or the plaintiff as not being a purchaser of that character by reason of his mortgage being usurious and as not being a creditor of Elmendorf, can question its validity, may not be entirely clear. (Kendall v. Hodgins, 1 Bosw., 659, and cases there cited.)
Whether the judgment may. be treated as utterly void, or whether it can only be set aside at the instance of a bona fide purchaser or mortgagee, may make a great difference in respect to the rights of the plaintiff and of M. Schoonmaker, (under such judgment,) as between themselves.
If the judgment cannot be treated as utterly void—but if, on the contrary, it is to be regarded as valid—as between the parties to it, then it will follow that Schoonmaker, by virtue of his judgment and execution, acquired a lien on the boat and on the surplus arising from the sale and remaining after satisfying the claims above declared to be the first two in point of priority. The only persons who can question Schoonmaker’s claim to that surplus are, first, the plaintiff, who is not a creditor of Elmendorf nor a bona fiide purchaser from John Van Vechten, and, *404 second, Elmore, who is not a creditor of Elmendorf, and whose only claim is as mortgagee of John Yan Yechten. But John Yan Yechten, as it has been found, had no actual interest in the boat, although he held a regular paper title, and Elmore advanced nothing on the faith of his mortgage.
Assuming that neither the plaintiff nor Elmore is in a position to assail the judgment, and that it is valid as between Schoonmaker and Elmendorf, it would follow that Schoonmaker’s claim as the owner of such judgment is the third, Elmore’s the fourth, and the plaintiff’s the fifth, in point of priority.
As Griffiths’ levy was abandoned by his direction, I do not see that he has any lien on the boat; and if not, he has none on its proceeds.
If the judgment confessed by Elmendorf to Schoonmaker shall be held to satisfy the requirements of the Code, then Schoonmaker will be entitled (for the amount due upon it) to priority over Shaw for the same reason that he is entitled to priority over him for the amount due on the judgments recovered by the Westchester County Bank.
As the views expressed make a new trial necessary, even if such judgment does not conform to the provisions of the Code, I do not feel disposed to express any opinion upon the question of its regularity.
I think the judgment should be reversed and a new trial granted, with costs to abide the event.
Mongrief, J., concurred in this opinion.