Ray *v.* Birdseye.

On writ of error to the supreme court. The cause came before the supreme court upon special verdict, in May, 1845. A report of the case, in which the special verdict is given at length, with the reasons of the court, will be found in 1 *Denio*, 61 The cause was argued here by

*M. T. Reynolds & H. Spencer*, for plaintiffs in error.

*J. C. Spencer*, for defendant in error.

## RAY *vs.* BIRDSEYE.

An execution is a lien upon personal property of the judgment debtor from its delivery to the sheriff, subject only to the right of a purchaser in good faith acquired before the actual levy. (2 *R. S.* 366, § 17.)

One to whom property is assigned in payment of a pre-existing debt, is not such a " purchaser in good faith." The lien of the execution, although no levy had been made at the time of the assignment, is superior to his title.

Where a sheriff levied upon a growing crop owned by the judgment debtor and another, he was constructively in possession of the whole, so that when the debtor afterwards and before the return of the execution acquired his co-tenant's share, the sheriff rightfully sold the whole upon his original levy.

An attorney who prosecutes a suit to judgment is not bound, by virtue of his office, to direct the sheriff in the manner of collecting the execution, and when sued for directing a levy upon particular property, he is not entitled to double costs under 2 *R. S.* 617, § 24.

Ray v. Birdseye.

ERROR from the supreme court. The cause originated in a justice's court and was carried by appeal to the Onondaga common pleas, where judgment was obtained by the plaintiff, which, on writ of error, was reversed by the supreme court in January term, 1843. A report of the facts then appearing in the case, with the opinion of the court, will be found in 4 *Hill,* 158. Upon the second trial before the common pleas, it was shown by the plaintiff that in July, 1839, Ray, the plaintiff, signed a note with Houghtaling, as his surety. The note was for $200, payable January 1, 1841. Early in September, 1840, one Philips let about sixteen acres of land to Houghtaling, to cultivate a crop of wheat upon shares. Houghtaling proceeded to cultivate the same, and upon the 16th of September had finished sowing the wheat, excepting the dragging in of about a bushel and a half. He then called upon Ray and "turned him out" his half of the wheat, "to secure him for the note," and "told him to sell it or do what he had a mind to with it, and pay up the note." Ray thereupon employed Houghtaling to finish dragging in the wheat, and directed his own hired man to look after the wheat and see that the fences did not get down, and to keep cattle out, which he did. On the 3d of October Houghtaling purchased of Philips the land on which the wheat was sowed, together with Philips' half of the crop. On the 5th of October he turned out this half to Ray in the same manner he had turned out the other, and for the same purpose. The defendant then showed that on the 21st of July, 1840, he delivered to the sheriff an execution upon which the wheat was subsequently sold. It was returnable the third Monday of October, 1840. On the 19th day of September, the sheriff levied upon the whole crop of wheat and sold it on the last day of October, 1840, the defendant, who was the attorney of the plaintiff in the execution, directing the sale. At the time of the levy the sheriff did not know of what had taken place between Houghtaling and Ray, and he kept secret the fact that he had made a levy.

The plaintiff's counsel requested the court of common pleas to charge, that by the levy on the 19th September, the sheriff

Ray *v.* Birdseye.

acquired no legal possession available against the owners of the wheat, Ray and Philips, and Houghtaling then having neither property in nor possession of the wheat, the sheriff was a trespasser, and no foundation for a constructive levy would arise from the sheriff's act. He also requested the court to submit to the jury the question of a change of possession of the wheat from Houghtaling to Ray, alleging that inasmuch as it was a growing crop, evidence of title was evidence of possession, no other being practicable: at all events that there was some evidence of change of possession for the jury. The court omitted to do this, and charged that if the sheriff levied on the whole crop on the 19th of September, and Houghtaling became the owner of one half of it afterwards, and in the life of the execution, the levy was good and effectual to hold such after acquired interest in the wheat; that as to the half first turned out to Ray, Ray's interest in it must be regarded as that of a mortgagee of personal property, and there was no evidence that such a mortgage was filed in the town clerk's office; that the execution and levy conferred a better right than Ray's to that half of the wheat, unless Ray showed an actual and continued change of possession of the wheat; that Houghtaling being shown to have been engaged as apparent owner in finishing the putting in of the wheat after the turning out to Ray, and Ray not being shown to have exercised any acts of ownership over it from the time it was turned out until the levy, there was no evidence before the jury of the actual change of possession, which the law required in the case of a mortgage of personal property not filed; and that for these reasons the defendant was entitled to their verdict. The plaintiff's counsel excepted to the omission to charge as requested, and also to the charge given. The following opinion was delivered upon the last argument of the cause in the supreme court, by

NELSON, Ch. J. This case when formerly before the court was very fully examined, and all the questions of any importance involved, were then disposed of, except the one arising under the act in relation to personal mortgages.

Ray *v.* Birdseye.

The act concerning the filing of personal mortgages is as follows: "Every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage or a true copy thereof shall be filed, as directed in the succeeding section of this act. (2 *R. S. p.* 71, § 9, *2d ed.*)

The provision is plain and explicit and its meaning too clear to be misapprehended. The mortgage must in all cases, and under all circumstances, be filed before it becomes operative against a judgment creditor or subsequent purchaser, with a single exception, and that is where actual possession has been taken and continued of the property mortgaged by the mortgagee; and this without any modification or qualification arising out of the nature or condition of the property, such as its bulk, difficulty, or even impossibility of change of possession by removal or otherwise, or any other like consideration or excuse. In all these cases, however plausible may be the reasons for omitting to accompany the mortgage with an actual change of possession, on account of the situation and condition of the article, they afford none for the omission or neglect to file the instrument. The difficulties suggested are not in the way of a compliance with the statute in this respect. And if from the situation or condition of the property, it would be impracticable to make a change of the possession, so much the more necessity of requiring that notice of the change of ownership should be given by filing.

I agree with the court below, that all the evidence given of a change of possession in this case, from the time of the mortgage to the levy upon the crop, was too slight to deserve the name of proof, and it was right in refusing to submit the question to the jury.

*H. P. Winsor,* for plaintiff in error, argued 1. That the transfer of the wheat to Ray, gave him the absolute ownership of it, without defeasance, condition or right of redemption; that it was not intended to operate as a mortgage, as there was no condition or provision by which the wheat would in any contingency revert to Houghtaling: the mere fact of its being transferred as a security does not render the transfer a mortgage. (*Stoddard* v. *Butler,* 20 *Wend.* 507.) 2. That the provisions of the statute requiring an immediate delivery and an actual and continued change of possession of the things sold were complied with, the care and control of it being at once surrendered, and the wheat being a growing crop, not being susceptible of any other or better delivery. 3. At all events the question whether there was an immediate delivery and actual change of possession was a proper one for the jury. 4. The levy did not confer a better right than Ray's to either half of the wheat.

*N. Hill, Jr.* for defendant in error, after maintaining the several positions taken in the decision of the cause by the supreme court, insisted that as the action was brought against the attorney who issued the execution for causing that process to be executed upon property which was liable to be taken and sold upon it, he was sued for an act done by him in virtue of his office and which it was his official duty to perform, and if he succeeded upon the writ of error he was entitled to recover his taxed costs and one half thereof in addition. (2 *R. S.* 617, § 24.)

THE CHANCELLOR. In the view I have taken of this case it has become unnecessary for me to consider the question, whether the wheat, for the alleged converson of which this suit was brought, was turned out to the plaintiff as a trustee, to sell the same and apply the proceeds to the payment of the note which he had signed as surety for Houghtaling, or was turned out to him as a security in the nature of a mortgage, to indemnify him against his liability as the surety for Houghtaling upon the note then held by Curtis. There is no foun-

dation for even a pretence that Ray agreed to take the wheat at its then value, and pay the note himself; and thus to discharge Houghtaling from further liability thereon. Houghtaling and Wright both testified that Houghtaling turned out the last as well as the first half of the wheat, to *secure* Ray as surety on the note. And even after the last half of the wheat had been turned out, Houghtaling offered to turn out to Ray other property which he had subsequently acquired, as he wished to have him fully secured. Upon this state of facts if the wheat had been winter killed or otherwise destroyed before actually sold by Ray, the loss would have fallen upon the principal debtor; so that Ray would have his remedy over against the latter if he was subsequently compelled to pay the note as surety. On the contrary, if the crop of wheat had been large, so as to have produced upon the sale thereof a much larger sum than was necessary to pay the note, and the expenses of harvesting, &c. the surplus proceeds of the sale would have belonged to Houghtaling and not to Ray. The plaintiff in this suit, therefore, was not a bona fide purchaser or mortgagee of either half of the wheat, so as to give him a preference over the execution which was previously in the hands of the sheriff, even if there was an immediate delivery of the wheat to Ray, and a continued change of possession previous to the actual levy of the execution thereon.

I had occasion to consider that question in the case of *Slade* v. *Van Vechten*, which came before me in the court of chancery, in April 1844. (11 *Paige's R.* 21.) And I then came to the conclusion and decided that a trustee, to whom goods were assigned, to sell the same and apply the proceeds to the payment of antecedent debts merely and without any new consideration for such assignment, was not a *bona fide purchaser*, within the intent and meaning of the seventeenth section of the article of the revised statutes relative to executions against property, (2 *R. S.* 366, § 17,) so as to protect his title from an execution against the assignor which was previously in the hands of the sheriff. There is a difference in this respect between the thirteenth and seventeenth sections of that article. By the common law, the goods of the defendant were

bound from the teste of the execution, so as to overreach all sales made by him previous to the delivery of the execution to the sheriff. This was subsequently remedied by the statute, which declared that no execution should bind the property of the goods of the person against whom it should be issued but from the time such execution should be delivered to the sheriff to be executed. (1 *R. L. of* 1813, *p.* 501, § 6.) The same provision, in substance, is incorporated into the revised statutes, in the thirteenth section of the article relative to executions against property. (2 *R. S.* 365.) That provision is general, and is not restricted to the protection of bona fide purchasers without notice only. Any purchaser, assignee, or mortgagee for a valuable consideration, in security for a pre-existing debt, or otherwise, is therefore entitled to protection under the thirteenth section of that article, to the same extent as he would have been by the common law, if his right to the property had been acquired previous to the teste of the execution.

Where an execution has been actually delivered to the sheriff to be executed, however, it is a legal lien upon all the personal property of the judgment debtor, liable to execution, within the bailiwick of the sheriff. And to enable a subsequent purchaser or assignee of such property to overreach this prior legal lien of the execution thereon, before levy, and to protect his title under the new provision of the revised statutes on the subject, he must show that he is a bona fide purchaser without notice, within the intent and meaning of the seventeenth section before referred to. · For the protection of that section only extends to that class of purchasers. (2 *R. S.* 366, § 17.)

As a general rule, a subsequent purchaser or incumbrancer, who obtains the legal title to property, or a mortgage or lien thereon, merely in payment or satisfaction of a pre-existing indebtedness, is not entitled to protection as a *bona fide purchaser,* without notice of a prior equity, or lien upon the property. But the relinquishment of a valid security or lien which he before held for the payment of his debt, and which cannot be revived so as to place him in the same situation substantially as he was in previous to the purchase, is undoubtedly

sufficient to constitute him a bona fide purchaser, where he is not chargeable with notice of the prior equity or lien upon the property. To constitute a bona fide purchaser who is entitled to protection against a prior legal or equitable right of which he had no notice, such purchaser must have parted with something which was valuable, upon the faith of his purchase and before he had notice of such prior right or equity. (*Matter of Howe*, 1 *Paige's Rep.* 125; *Lawless* v. *Kinney*, 1 *Hud. & Bro. Rep.* 400; *Churchill* v. *Grove*, 1 *Chan. Ca.* 35; *Jackson* v. *Rowe*, 2 *Sim. & Stu. Rep.* 472; *Jackson* v. *Campbell*, 19 *John. Rep.* 282; *Coddington* v. *Bay*, 20 *id.* 637.)

. In the case under consideration the 'judgment debtor was aware of the fact that the execution was in the hands of the sheriff, and was therefore a legal lien upon his interest in the wheat at the times when he voluntarily sought the plaintiff Ray and turned the wheat out to him, in fraud of the rights and lien of the judgment creditor, and of the sheriff, under the execution. And as Ray parted with nothing of any value upon the faith of the transfer of the wheat to him, he is not in a situation to claim the benefit of that fraudulent act of Houghtaling; although he might not have been aware of the existence of the execution against Houghtaling at the time of such transfer.

By the levy upon Houghtaling's interest in the wheat on the 19th of September, which levy had relation back to the time when the wheat was first sown, the sheriff was constructively in possession of the other undivided half thereof, by virtue of the execution, the moment Houghtaling acquired an interest therein by purchase of that half, the execution being then in full life. The sheriff, therefore, was authorized to sell the whole of the wheat on the execution. And the defendant in this suit was entitled to a verdict, without reference to the question whether the transfer to Ray was an absolute conveyance, or was a security in the nature of a mortgage merely; and also without reference to the question whether there was or was not an immediate delivery and a continued change of possession. Any errors in the charge of the court upon those

Ray *v.* Birdseye.

points, even if such errors existed, could not, therefore pre-judice the rights of the plaintiff, as he had none.

For these reasons, without examining other questions in the cause, I think the judgment was not erroneous and that it should be affirmed.

If the defendant, as the attorney who issued the execution, was a public officer appointed under the authority of this state, as I think he was under the provisions of the revised statutes, this suit was not brought against him for any act done by him by virtue of his office. For it was no part of his duty as at-torney in the execution, to direct or control the sheriff in the discharge of his duty under such execution. The client has no right to ask his attorney to subject himself to the risk of an action, by directing the sheriff to levy upon any particular property which is supposed to belong to the defendant in the execution. The defendant is not, therefore, entitled to double costs, under the provisions of the revised statutes on that subject.

Senators PUTNAM, SPENCER and VAN SCHOONHOVEN de livered written opinions in favor of affirmance, concurring in the views of Chief Justice Nelson, in the opinion delivered in the supreme court.

Upon the question being put, *"Shall this judgment be re-versed?"* all the members of the court present voted for affirm-ance, viz. : The PRESIDENT, The CHANCELLOR, and Senators BACKUS, BARLOW, BURNHAM, EMMONS, LOTT, PORTER, PUTNAM, SANFORD, J. B. SMITH, S. SMITH, SPENCER, TAL-COTT, VAN SCHOONHOVEN, WHEELER—16.

Judgment affirmed.