The facts testified to by the sheriff were such as would have justified the jury in finding that a levy was made upon the goods. He says: "I went to the plaintiffs' store, found James C. Roth there; he was up stairs; I looked the goods over, up stairs and down. Very soon John Roth came in; I showed him the executions; he said I need not levy them for they would be promptly paid; I asked him if he could pay them then; he said he could not; I told him I could hold the levy but would give him a little time to pay." The last remark of the sheriff, made in answer to the request not to levy, was equivalent to saying "I levy on the goods, but will not enforce the levy by an immediate sale;" and must have been so understood by the parties. The goods being present, and within the power of the sheriff, these circumstances constituted such an exercise of dominion over them as amounted to a levy, at least as against the defendants in the execution. (Green v. Burke, 23 Wend. 490; Baker v.Binninger, 4 Kern. 270.) The judge, therefore, properly refused to instruct the jury that the facts testified to were not sufficient to constitute a valid levy. The instruction asked for could only have been given in case there was no evidence to justify the jury in finding a levy.
The next question arises on the exception to that part of the charge in which the judge instructed the jury that if there was a sufficient levy made on the 24th of August, and the executions were not satisfied, they might regard the levy as continued and covering the goods purchased subsequent to the levy and during the life of the executions. If *Page 489 
a levy upon the goods purchased after the 24th of August, and prior to the return day of the executions, was necessary to justify the sale of the goods by the sheriff after the return day, I should be disposed to regard the exception as well taken. I am at a loss to discover upon what principle a levy upon goods which the defendant possessed at the time of the levy, can operate, constructively, as a levy upon goods subsequently acquired by the defendant, which were never seen by, or within the power of, the levying officer, during the life of the executions. But, I am of the opinion that no actual levy was necessary to justify the defendant in seizing and selling the goods, after the return day of the executions. As against the defendant in the judgments, the lien of the executions attached to all the goods held by such defendant, within the jurisdiction of the sheriff during the life of the executions, without a levy. At common law, the writ of fieri facias bound the goods of the debtor from the time when the writ was tested, which often preceded by a whole vacation the time of its delivery to the sheriff. (Skin. 257; 7 T.R. 23, note (b.); Ray v. Birdseye,
5 Den. 624-5; Hotchkiss v. McVickar, 12 John. 406.) This effect given to the writ by relation, often operated very unjustly, especially as against bona fide purchasers; and to prevent that evil it was declared, by the statute of frauds, (29 Car. 2, ch. 3, § 16,) that goods should be bound only from the time when the writ should be delivered to the sheriff to be executed. (1 Saund. 219 e., note t.) That statute was early re-enacted in this State (1 R.L. 501, § 6); and, by the revised statutes of 1830, the protection of bona fide purchasers was further extended to the time of actual levy. (2 R.S. 365, §§ 13, 17.) These provisions are continued in force, and are applicable to executions against property under the code of procedure. (Code, §§ 286, 289, 291.) The goods of the defendant in an execution, therefore, as against him, are "bound from the time of the delivery of the execution to the sheriff to be executed" *Page 490 
(2 R.S. 365, § 13); and the reason upon which this rule is founded must extend the lien to all goods acquired by the defendant, within the jurisdiction of the sheriff, during the life of the execution. (Ray v. Birdseye, 5 Den. 619.) This lien is created by law for the benefit and security of the plaintiff, and cannot be defeated by any act of the defendant short of a sale to a bona fide purchaser; and, in my opinion, it is not lost by the neglect of the sheriff to levy upon or to take the goods into his custody during the life of the execution, but may be afterwards enforced by the sheriff, without such prior levy. There is nothing inconsistent with this position in the case of Hotchkiss v. McVickar (supra); and if there be, that case cannot be reconciled with the later decision inLambert v. Paulding (19 John. 311.) In this case a sloop had been removed by the defendant in an execution from the city and county of New York to the county of Westchester, after the delivery of the execution to the sheriff of New York, and before any levy. The next day after the removal, the sheriff of Westchester levied upon the sloop, by virtue of an execution in favor of another plaintiff against the same defendant; and having afterwards sold her, he was ordered, on motion made in behalf of the plaintiffs in the first execution, to pay the proceeds of the sale to them — such proceeds being less than the amount of their execution. In deciding that case, the court say: "The delivery of the fieri facias to the sheriff of the city and county of New York bound the goods of the defendant then in his bailiwick,
and the plaintiffs in that execution cannot be deprived of the lien on the sloop, which was then lying in New York, by the act of the defendant in removing the vessel into another county. He would be liable to an action at the suit of the sheriff for so removing the property." From this it will be seen, that by the delivery of an execution to a sheriff, without actual levy, he acquires a special property in the goods of the defendant *Page 491 
sufficient to sustain an action against the general owner for their removal. That special property the law creates, not for the benefit of the sheriff, but for the benefit of the plaintiff in the execution; and the object for which it is enacted will not allow it to be lost by the sheriff's negligence. As the lien could be enforced only through the action of the sheriff, he had, I think, a right, by virtue of it, as against the defendant, to seize and sell after the expiration of the execution any property upon which such lien may have attached, although no previous actual levy had been made. The death of the defendant after the issuing of an execution and before a levy does not prevent the sheriff from seizing and selling the goods of the defendant after his death, "for by the execution awarded the goods are bound." (Parkes v. Mosse, Cro. Eliz. 181.) If the goods are bound after the death of the defendant, and after removal from the county without levy (Lambert v. Paulding, supra), they must be equally bound after the return day of the writ. The spirit of the rule which declares execution to be the life of the law (Bacon's Abr. Execution, A.), and which creates the lien without a levy, requires the continuance of such lien after the return day, so long as the rights of purchasers, or of other creditors, do not intervene. It is the duty of the defendant to satisfy the execution as well after the return day as before, and no wrong can be done to him by continuing the lien which has once attached upon his goods, until he makes such satisfaction.
But whether the foregoing views are correct or not, the charge upon the point in question may be sustained on the ground that there was a confusion of goods, produced by the acts of the plaintiffs, which rendered it difficult, if not impossible, for the sheriff to distinguish between those levied upon and those which had been subsequently introduced. The plaintiffs refused to separate them, and upon well-established principles, the sheriff, under such circumstances, was justified in taking the whole. (Hart v. Ten *Page 492 Eyck, 2 John. Ch. 62, 108, Popham, 38, pl. 2; 2 Kent's Com. 364.) This ground of defence was not presented by the charge, so far as it is set forth, but as the unquestionable facts would have justified a positive instruction to the jury that the defendant was justified in taking the goods held by the plaintiffs during the life of the execution, the error of the charge, if there was any error, was wholly immaterial.
The only remaining question is presented by the exception to the charge as to the credibility of one of the witnesses. Upon that subject the charge was that the jury were the judges of the credibility of the witnesses, and if they believed John Roth had knowingly testified falsely in reference to any fact, he was not entitled to be believed in reference to any other fact testified to by him. To the last part of this charge there was an exception. If this instruction were to be understood as forbidding the jury to give credit to any statements of the witness, although they might be satisfied of the truthfulness of some part of them, I should be inclined to doubt its correctness, although instructions going, as I understand them, to that extent, have sometimes been sustained. (Dunlop v. Paterson, 5 Cow. 243; The State v. Sim, 1 Dev. 508; Conrad v.Williams, 6 Hill, 447.) The object of all testimony is to establish the truth, and however corrupt the instrument of evidence may be, I am not aware of any legal rule which forbids a jury to give credit to such evidence (when the law allows it to be submitted to their consideration), so far as they may believe it to be truthful. I understand this question to have been settled by this court in the case of Dunn v. The People,
lately decided, in favor of the right of the jury to determine whether any and what credit should be given to a witness under such circumstances. The charge on this subject, however, taken altogether, presents the question as fairly to the jury as the plaintiffs had any right to demand. If the witness had committed *Page 493 
perjury in his testimony, he was certainly not "entitled to be believed" upon any doubtful question, and the instruction on this subject should be construed in connection with the previous expression, that "the jury were the judges of the credibility of the witnesses." Thus construed, the language excepted to must be regarded as the expression of the strong, and certainly very rational, opinion of the judge that the witness was utterly unworthy of credit, but still leaving the question of his credibility to the jury. In this way only can the different expressions of the charge be reconciled.
The judgment of the supreme court should be affirmed.
All the other judges concurring, judgment affirmed. *Page 494