JOHN HODGE, Respondent, v. GEORGE ADEE and JAMES
SMITH, Appellants.

(GENERAL TERM, SIXTH DISTRICT, JANUARY, 1870.)

Possession of a chattel for an indefinite time, with an agreement to pay for
its use, and an understanding with the owner that the holder may pur
chase at any time, does not constitute a leviable interest therein.

But where a chattel was so held, and a levy made thereon, and a sale of
the chattel under execution against the property of the holder, who inter-
mediate the levy and sale purchased the chattel,—Held, that the levy held
good, notwithstanding a renewal, in due time, of the execution prior to
an adjourned day of sale (the notice having been originally for a time not
within sixty days from the date of the execution), and although, pre-
viously to the execution sale, there had been a resale to the original
owner, who knew of the levy.

Where the possession and withholding of personal property, obtained
through an execution sale thereof, constituted the unlawful taking and
conversion in an action therefor, and the summons was delivered for ser
vice by a justice of the peace to a person duly deputized by him, though
not a regular constable, before the sale, and was served on the defendants
immediately after,—Held, that the action was commenced before the cause
of action accrued, and that it could not be sustained.

THIS action was brought before a justice of the peace upon
a complaint for wrongfully taking and converting a cow,
valued at sixty dollars. The defendants pleaded a sale by the
defendant, Smith, as constable, under execution against one
Tupper, upon a judgment of a justice of the peace at Delhi,
in Delaware county, rendered on or about August 27, 1864.

The summons in this action was issued September 23, 1867,
and judgment recovered in favor of the plaintiff, from which

Hodge v. Adee.

the defendants appealed, and had a new trial in the County Court, where a jury gave a verdict for the plaintiff, upon which judgment was entered for $112.78 damages and costs, and the defendants appealed. The remaining facts appear in the opinion of the court.

*Henry Davies*, for the plaintiff.

*George Adee*, for the defendants.

Present—BALCOM, BOARDMAN, PARKER and MURRAY, JJ.

By the Court—BALCOM, P. J. The judgment rendered by Hathaway, as a justice of the peace, in favor of Forman, against Tupper, for twelve dollars and ninety-three cents, was not void, although the constable who served the summons in the suit appeared as attorney for the plaintiff on the return day, and presented the note on which the judgment was rendered, and proved the execution of the note as a witness. (See *Wilkinson* v. *Vorce*, 41 Barbour, 370.) It was erroneous, and it could have been reversed on appeal. (See 2 R. S., 233, § 44; Laws of 1864, p. 1006, chap. 421; *Ford* v. *Smith*, 11 Wend., 73; *Miles* v. *Pulver*, 3 Denio, 84.) But as it was only irregular, the execution issued on it was valid by virtue of which the defendant, Smith, levied on the cow in question and sold her, or Tupper's interest in her, and title to her. (See *Wilkinson* v. *Vorce*, *supra*.)

Hathaway's docket of such judgment was received in evidence without objection; and it will be presumed, if the objections now raised against the validity of the judgment had been taken on the trial, the summons would have been produced. It was not necessary to the validity of the judgment, that the docket should show the place where the summons was returnable, or the place where the justice called the parties; and the plaintiff appeared by Smith as attorney, and the judgment was rendered. (2 R. S., 268, § 243, subdivisions 2 and 3.) And I am of the opinion the evidence

showed that the judgment was sufficient to uphold the execution issued on it.

The evidence established that the plaintiff was the owner of the cow on the 31st day of May, 1867, when the defendant, Smith (as constable), levied on her, by virtue of the execution issued to him by Hathaway, on the above mentioned judgment which he had rendered in favor of Forman against Tupper, on the 29th day of August, 1864. The cow was then in the possession of Tupper. The plaintiff had said to him, he could keep the cow and pay for the use of her, and when he saw the way of paying for her, he (plaintiff) would sell her to him. But that arrangement did not transfer to Tupper a leviable interest in the cow; for the reason that the plaintiff had the right to take her from him at any time. Chief Justice SAVAGE, in *Otis* v. *Wood* (3 Wend., 498), reviewed several cases, and then said: "The principle of these cases is, that a person in possession of a chattel, having a right to such possession for a specific time, has an interest which may be sold." The fact that Tupper had the possession of the cow, and leave from the plaintiff to keep her *an indefinite time*, on paying the plaintiff for the use of her, and also had been told by the plaintiff he would sell her to him when he (Tupper) saw the way of paying for her, were insufficient to give him (Tupper) a leviable interest in the cow. (See 2 Cowen, 543; *Strong* v. *Taylor*, 2 Hill, 326; 4 Denio, 327; *Herring* v. *Hoppock*, 15 N. Y. Reps., 409.) It is clear that the hirer of a chattel must have the right to the possession of the same for some specific time to give him a leviable interest in it.

The cow remained in the possession of Tupper until she was sold by the defendant, Smith, as constable, by virtue of the execution issued to him by Hathaway; which sale was made on the 23d day of September, 1867.

The plaintiff sold the cow to Tupper on the 8th day of July, 1867; and the plaintiff had no title to or interest in her against Forman's execution subsequent to that date, unless

Hodge *v.* Adee.

he acquired title to her by purchasing her from Tupper a day or two before Smith sold her, as above stated.

Smith posted notices that he would sell the cow, by virtue of the Hathaway execution, on the 29th day of July, 1867. But he did not sell the cow on that day ; which day, as I compute the time, was not within sixty days from the date of the execution. Hathaway renewed the execution for the full amount on the 27th day of July, 1867 ; which time was within sixty days from the date of the execution.

It does not appear that Smith saw the cow, or made any memorandum respecting her on the execution, between the time he levied the execution on her on the 31st day of May, 1867, and the 23d day of September next thereafter when he sold her.

Executions issued by justices of the peace, " shall be returnable sixty days from the date of the same." (Code, § 64, sub., 12.) It is provided by chapter 512 of the laws of 1857 (Laws of 1857, vol. 2, p. 87): " If any execution issued by a justice of the peace upon a judgment rendered by him, be not satisfied, it may from time to time be renewed by said justice, by an indorsement thereon to that effect, signed by him, and dated when the same shall be made. If any part of such execution has been satisfied, the indorsement of renewal shall express the sum due on the execution. Every such indorsement shall be deemed to renew the execution in full force, in all respects, for sixty days from the date thereof." This statute was necessary in consequence of the change made by the Code respecting the time executions shall be returnable.   (See 2 R. S., 251 and 252, § 145.)

It was decided in *Chapman* v. *Fuller* (7 Barb., 70), that " an execution, issued by a justice of the peace, may be renewed on the last day it has to run, so as to retain the lien thereof upon property levied on by the constable, sufficient to satisfy the execution, and which he has on hand, for want of bidders."

According to the principle of that decision, the levy Smith made on the cow on the 31st day of May, 1867, was kept

good by the renewal of the execution on the 27th day of July thereafter, until he sold the cow on the 23d day of September in the same year.

It clearly was in the power of Tupper to purchase the cow of the plaintiff on the 8th day of July, 1867 ; so the levy on her would be good as against him, and enable the officer (Smith) to hold her against any subsequent purchaser from Tupper. And I am of the opinion the sale of the cow by Smith (as constable) was rightful, and as valid as it would have been if he had made a new levy, in fact, on the cow, by virtue of the execution, after Tupper purchased her of the plaintiff, and before the latter bought her back of the former. And no one can doubt, if such a new levy had been made, that the sale of the cow on the 23d day of September would have been lawful and valid.

The evidence shows that the levy of the execution, on the 31st day of May, was on the cow, and not a special levy upon the mere right of Tupper to her possession and use. It was a levy of which he could not complain. But it would have been of no benefit to the plaintiff in the execution (Forman) if Tupper had not subsequently purchased the cow of the plaintiff.

The plaintiff knew the cow had been levied on when he bought her back of Tupper, and of course took her back subject to such levy. (See 11 Wendell, 548, *infra*.)

If the plaintiff had not sold the cow to Tupper, after Smith levied on her, he would have had a right of action against Smith for levying on her. But none against the defendant Adee, who did not do anything to render himself liable for such levy.

When the plaintiff sold the cow to Tupper he parted with the right of action he then had for the alleged wrongful taking and conversion of her by Smith. (See *McKee* v. *Judd*, 2 Kernan, 622.) And as Tupper must be deemed to have purchased the cow for the benefit of his creditors, as well as himself, it was out of his power to retransfer to the plaintiff the right of action the latter had previously had for the levy

on the cow by Smith, for the reason that the right of action could not be retransferred by Tupper to the plaintiff without a resale of the cow by the former to the latter, which could not be done in consequence of the levy being on the cow as against Tupper. (See *Butler* v. *Maynard*, 11 Wend., 548.)

The execution bound the property of Tupper during all the time from its delivery to Smith until he sold the cow. And when Tupper purchased the cow, the levy on her continued as against him within the principle of the decision in *Roth* v. *Wells* (41 Barbour, 194; S. C. 29, N. Y. Reps., 471.) When the plaintiff subsequently purchased the cow, he knew she had been levied on, and therefore was not a purchaser in good faith. He did not take possession of the cow, and knowledge by him that the execution was in the hands of the constable prevented him being a purchaser in good faith. (2 Wait's Law and Practice, 721 to 724.) The constable having levied on the cow on the 31st day of May, he was at least constructively in possession of her when Tupper purchased her on the 8th day of July, and also thereafter until he sold her. I base this conclusion upon the principle of the decision in *Birdseye* v. *Ray* (4 Hill, 158; S. C., 5 Denio, 619), where it was held that where a sheriff levied upon a growing crop owned by the judgment debtor and another, he was constructively in possession of the whole; so that when the debtor afterward, and before the return of the execution, acquired his co-tenant's share the sheriff rightfully sold the whole upon his original levy.

The summons in this action was issued and delivered to the person deputed to serve it, on the morning of the 23d day of September, before the cow was sold by Smith, by the direction of the defendant, Adee, on that day. The person who was deputed by the justice to serve the summons retained possession of the summons until after he bid off the cow, and he then served it on the defendants. The person who was authorized to serve the summons is to be deemed a constable for all purposes in the action. (See *Wilkinson* v. *Vorce*, *supra*.) And the suit was commenced at the time the sum-

mons was delivered to be served, to the person whom the justice had authorized to serve it. (2 R. S., 227, § 12, sub. 2; *Cornell* v. *Moulton*, 3 Denio, 12.) It follows that the plaintiff could not recover for the sale of the cow, for the reason that the action was commenced before the sale was made.

If the foregoing conclusions are correct, the County Court erred in refusing to nonsuit the plaintiff and in the charge to the jury, and the judgment of that court should be reversed and a new trial granted in the action in that court, costs to abide the event.

New trial granted.