### GUILFORD *v.* MILLS.

*(Supreme Court, General Term, Third Department. March 15, 1892.)*

1. **FRAUDULENT CHATTEL MORTGAGE—RIGHTS OF EXECUTION CREDITORS.**
   In an action by the mortgagee of a stock of goods to recover the same from a sheriff, who had levied executions thereon, the court, after finding that the mortgage under which plaintiff claimed was not only fraudulent as to existing creditors, but that the judgments on which certain of the executions in question were issued were recovered upon debts owing at and prior to the time of the execution of the mortgage, erred in finding that plaintiff was entitled to maintain the action.

2. **SAME—LIEN OF EXECUTION.**
   Executions issued on judgments recovered against a fraudulent mortgagor of goods, and placed in the hands of the sheriff, create liens on such goods which cannot be divested by a subsequent sale under the mortgage or general assignment for the benefit of creditors.

Appeal from Warren county court.

Action by Samuel T. Guilford against Joseph B. Mills, sheriff, etc., to recover a stock of goods levied on under executions by defendant. From a judgment for plaintiff, defendant appeals. Reversed. For former report, see 11 N. Y. Supp. 261.

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

*C. S. Enches* and *E. L. Stearns,* (*L. H. Northup* and *C. R. Patterson,* of counsel,) for appellant. *J. H. Bain,* (*E. T. Brackett,* of counsel,) for respondent.

HERRICK, J. On the 8th day of March, 1888, the plaintiff sold to William H. Crandall and Loren D. Boynton, copartners in business under the name of Crandall & Boynton, his stock in trade in the business theretofore transacted by him, for the sum of $2,764.87, which sum was paid and secured to be paid to the plaintiff as follows: $500 in cash; a note of Crandall & Boynton for $764.67; a bond and mortgage given by Crandall for the sum of $1,500 upon real estate owned by Crandall of the value of from $2,000 to $2,500. And that thereupon the said firm of Crandall & Boynton took possession of said property, and carried on business therewith in the store owned by the plaintiff, and rented from him by said Crandall & Boynton, and continued in such business until the month of March, 1889. That on the 14th day of February, 1889, the said Crandall & Boynton executed and delivered to the plaintiff a chattel mortgage upon all their stock in trade, accounts, debts, and demands, the consideration claimed therefor being the balance of the purchase price of the goods originally sold by the plaintiff to said Crandall & Boynton, and for rent and labor of the plaintiff. That, after the execution and delivery of said chattel mortgage to the plaintiff, Crandall & Boynton continued their business in the same manner and place as before, selling portions of the mortgaged property for cash and on credit, buying new goods and placing them with the others, making no distinction between the goods mortgaged and those thereafter purchased, selling both as from a common stock, keeping no record of the sales, but keeping the proceeds thereof, all of which was done with the knowledge of the plaintiff, and without any objection on his part; and he being one of the customers of said Crandall & Boynton, making purchases from them after the delivery of said chattel mortgage. The said Crandall & Boynton also used some of the demands included in the chattel mortgage to pay some of their debts, and in the purchase of goods to carry on their business. That on the 6th day of March, 1889, the plaintiff found a key to the door of the store, locked the store, and took the key away with him. On March 23d he advertised the merchandise included in said chattel mortgage for sale, on the 29th of the same month, at the office of an attorney one and one-half miles distant from the store where the merchandise was. Such merchandise was put up for sale under said chattel mortgage, only the plaintiff, his attorney, and one of the mortgagors being present, and the property was bid in by the plaintiff. On the 21st of March, 1889, William H. Crandall gave the plaintiff a chattel mortgage upon a quantity of personal property owned by him, as collateral security to the bond accompanying the mortgage upon real estate first mentioned, and given as part of the purchase price of the property sold by plaintiff to Crandall & Boynton. That on the 11th day of April, 1889, Crandall & Boynton confessed judgment in favor of the plaintiff herein for $1,415.62, damages and costs; the consideration therefor, as stated in the confession, being a balance due of $1,400 on the purchase price of goods sold by the plaintiff, March 8, 1889, to said Crandall & Boynton. That on the 11th day of April, 1889, the said Crandall & Boynton made a general assignment for the benefit of their creditors, and in said assignment the plaintiff was made a preferred creditor. The defendant is sheriff of Warren county, the county wherein all the foregoing transactions occurred, and where the property in question is located. That as such sheriff the defendant received executions on the 21st, 22d, 25th, and 30th days of March, and the 13th and 17th of April, upon judgments rendered against the firm of Crandall & Boynton; one of said executions, dated April 13th, being in favor of the plaintiff against said Crandall & Boynton. That on the 20th day of April the defendant made an actual levy upon the goods described in the complaint by virtue of said executions, and, on or about April 27th, the plaintiff replevied the goods so levied upon by the defendant, and still has them in his possession, and that such goods are of the value of $650. The trial court found that the plaintiff had no right or claim to the possession of the goods described

in the complaint, except under the chattel mortgage of February 14, 1889; and also found that said mortgage was made with intent to hinder, delay, and defraud the creditors of Crandall & Boynton, and that the same is fraudulent and void as to the creditors of Crandall & Boynton whose claims existed unsatisfied at that time. The court found, in addition, that the judgments upon which the first four executions were issued were recovered upon debts owing by Crandall & Boynton at and prior to the execution of the chattel mortgage of February 14, 1889, to the plaintiff; and these findings all seem abundantly sustained by the evidence in the case.

From these facts we cannot see how the plaintiff is entitled to maintain his action. The defendant stands in the place of creditors. He is the instrument by which they are enforcing their rights, and to allow the plaintiff, whose only title is one procured for the purpose of defrauding, and is held to be fraudulent and void as against creditors, to take the property from the defendant, would be simply allowing him to use the process of the court to consummate the fraud. A fraudulent mortgage, given to defraud creditors, gives neither title nor legal possession, as against execution creditors for a pre-existing debt; and as against such creditors the title and right to possession is still in the mortgagor, and, the mortgage being void as to such creditors, the property is regarded as that of the judgment debtor, and can be taken on execution the same as though no mortgage existed. *Kitchen* v. *Lowery*, 127 N. Y. 53–58, 27 N. E. Rep. 357. As against the plaintiff, the defendant was lawfully in possession of the goods, in behalf of pre-existing creditors, and he was not divested of that possession, or right to possession, by the assignment for the benefit of creditors made April 11, 1889: *First.* Because we think that that instrument was part of the plan or scheme to defraud creditors for the benefit of the plaintiff. There was no property of the assignors left for them to assign, the assignee could find none, there was nothing for the assignee to take, unless the previous mortgage and conveyances should be adjudged void, and the property pass to the assignee; and in that event the plaintiff was a preferred creditor under the assignment, and the amount of his claim, if valid, would apparently swallow up all the assets. *Second.* Because the assignment, if valid, could not remove the previously acquired liens of the executions in defendant's hands,—those, at least, which were placed in his hands for execution prior to the alleged sale under the chattel mortgage. An execution is a lien upon the personal property of the judgment debtor from the time of its delivery to the sheriff for execution, (*Ray* v. *Birdseye*, 5 Denio, 619; *Thompson* v. *Van Vechten*, 5 Abb. Pr. 458; *Stewart* v. *Beale*, 7 Hun, 405, affirmed 68 N. Y. 629; Code Civil Proc. § 1405;) and the defendant has a right to enforce the liens thus acquired under the executions, and for that purpose to retain possession of the property. Judgment should be reversed, and new trial granted, costs to abide the event.

All concur.